STATE of Tennessee, Plaintiff-Appellee,

v.

Ronald A. ROBERGE,
Defendant-Appellant.

Supreme Court of Tennessee.

Dec. 6, 1982.

Daniel J. Perky, Lexington, for defendant-appellant.

Jerry L. Smith, Asst. Atty. Gen., for plaintiff-appellee; William M. Leech, Jr., Atty. Gen. & Reporter, Nashville, of counsel.

## OPINION

HARBISON, Justice.

Appellant was convicted of possession of a controlled substance for resale and was sentenced to serve seven to ten years in the penitentiary.[1] Some seventy-four pounds of peyote cactus buttons containing mescaline, a Schedule I drug, were found in a duffel bag in the trunk of an automobile in which appellant was riding when the vehicle was stopped by Highway Patrol officers on February 24, 1979. The only issue on appeal is whether the trial court erred in overruling appellant's motion to suppress this evidence.

The Court of Criminal Appeals held that the officers had properly opened the trunk of the vehicle in order to inventory its contents. The majority held that the officers had properly opened the unlocked duffel bag in the course of making their inventory, but there was a dissenting opinion with respect to that issue. This Court granted review of the present case, along with several others, in order to consider the proper scope of an inventory procedure in connection with the impoundment of an automobile.

A serious question was raised in the present case, however, as to the standing of appellant and of a codefendant who was tried with him to challenge the search. The Court of Criminal Appeals concluded that the codefendant lacked standing and affirmed his conviction upon that basis. Since the vehicle in which appellant Roberge was riding as a passenger was rented jointly to him and to another person, the Court of Criminal Appeals held that he had sufficient standing to challenge the inventory procedure. The State in this Court has again raised the issue of standing, and we believe that the record is such that appellant has not shown sufficient standing to

1. The trial judge suspended this sentence after    appellant had served a portion thereof.

challenge the opening of the duffel bag and the inventory of its contents. We agree with the Court of Criminal Appeals that he probably did have sufficient standing to challenge the opening of the trunk of the automobile, but at the suppression hearing he was not shown to have any interest, possessory or otherwise, in the duffel bag or anything in it. Indeed the proof was entirely to the contrary.

▮▮▮ The record in the present case is very brief. Roberge did not testify either at the suppression hearing or at the trial of the case. It is fundamental that one challenging the reasonableness of a search or seizure has the burden of establishing a legitimate expectation of privacy in the place or property which is searched. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). *See Miller v. State,* 520 S.W.2d 729 (Tenn.1975), *cert. denied,* 423 U.S. 849, 96 S.Ct. 91, 46 L.Ed.2d 72 (1975). One does not have automatic standing to challenge a search simply because he is convicted of a possessory offense. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Further, one accused of a criminal offense may testify at a suppression hearing without incurring the risk that his testimony will be used against him by the prosecution as part of its case in chief. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Therefore, in our opinion, it was incumbent upon Roberge to establish in some way that he had some claim to or interest in the duffel bag, the search and seizure of which is the subject of his complaint. Instead he stood mute at the suppression hearing in the face of testimony from his codefendant that the duffel bag did not belong to either of them or to the other occupant of the car, a juvenile female who was accompanying them.

The codefendant, Robert Sproul, testified that he did not know that the duffel bag was even in the trunk of the car and that he never saw it until after he had been taken to jail. He testified that the officers had asked him a general question as to what was in the trunk of the car, and he

had told them that there were clothes and souvenirs. The officers testified to the contrary, stating that they had not asked Sproul about the contents of the duffel bag until after they had discovered it, and that he told them that the duffel bag contained some rocks and souvenirs which the parties had gathered in Texas. Sproul's testimony, however, was as follows:

"Q27. Now, did you recall the trooper coming back to the car and asking what the contents of the duffel bag was?

"A. He asked me what the contents of the trunk were, not the duffel bag.

"Q28. Is that before he looked in it?

"A. I really couldn't tell you.

"Q29. You don't know?

"A. No, I really don't, because there were—

"Q30. What did you tell him?

"A. I said—When I was asked what was in the trunk, I said clothes and souvenirs.

"Q31. Clothes and souvenirs. He didn't ask you specifically about the duffel bag?

"A. No, he didn't ask me anything specific about—The first thing I heard about the duffel bag was at jail.

"Q32. What do you mean when you first heard about it?

"A. When they asked me what was in the duffel bag when we were at the Henderson County jail. And I said, 'What duffel bag?' And they never showed it to us yet.

\*    \*    \*    \*    \*    \*

"Q34. Did you have a duffel bag in there?

"A. Earlier in the journey there was a girl with a duffel bag.

"Q35. All right; who?

"A. Another girl.

"Q36. Who?

"A. Debbie something or other.

"Q37. No one that was in the car at the time that you were stopped out there?

"A. No, she got out somewhere outside of Memphis.

"Q38. Is it your testimony that was her duffel bag?

"A. I don't know.

"Q39. Well, did you have a duffel bag?

"A. No, I didn't have a duffel bag.

"Q40. Did Roberge here have one?

"A. No, we had suitcases.

"Q41. Did the female juvenile have a duffel bag?

"A. She had a shopping bag.

"Q42. Did she have a duffel bag?

"A. She didn't.

"Q43. So you don't know anything about that particular duffel bag?

"A. Not the one in question.

    \*    \*    \*    \*    \*    \*

"Q48. And it's your testimony here today that didn't belong to you or any of the other occupants of that car?

"A. Correct."

██ Sproul was the only defense witness at the suppression hearing. Roberge did not take the stand to modify the foregoing testimony either at that hearing or at the trial. The record clearly shows that he made no claim to the contents of the duffel bag and that he has no standing to complain of an alleged illegal search or seizure of it. The written motion to suppress filed on his behalf stated only that Roberge was a passenger in the stopped vehicle. At no time, either orally or in writing, throughout these entire proceedings has Roberge ever claimed any right, title or interest in or to the duffel bag or its contents. In our opinion, therefore, he has not carried the burden of establishing any basis upon which he could claim a violation of any privacy right in connection with its seizure.

The connection of Roberge with the vehicle itself is quite tenuous. It is shown that the automobile was rented. The rental slip found in the car bore his name and that of another person, unidentified in the record. He was intoxicated and asleep when the vehicle, which was being driven by Sproul, was stopped. He was too intoxicated and disoriented to talk with the officers. They arrested him for public drunkenness. Sproul was also intoxicated and was arrested for driving under the influence.

The vehicle was stopped by a patrolman who had been following it and had noticed it weaving across the eastbound lanes of an interstate highway in Henderson County. The trooper called for assistance. After stopping the vehicle he made arrangements with a local wrecker company to tow the vehicle off the interstate highway. It was raining heavily, and the arrest occurred after darkness had fallen. Both Sproul and Roberge were too intoxicated to be entrusted with driving the vehicle, and the juvenile female who was accompanying them did not have a driver's license. The officers consulted with her about driving the car, but she advised them that she was unable to do so. They therefore had no reasonable alternative, in our opinion, other than to have it towed. Sproul had suggested leaving it on the emergency strip of the interstate and had also requested that he be permitted to drive it to a rest stop nearby. Both of the officers concluded, properly in our opinion, that these alternatives were not reasonable. We find no violation of any rights of any of the parties in the decision of the officers to have the vehicle towed. We agree with the Court of Criminal Appeals that the circumstances here were entirely different from those presented in *Drinkard v. State,* 584 S.W.2d 650 (Tenn. 1979).

It is clear from the testimony of the officers that they did not intend to take the vehicle to police headquarters or to impound it or its contents there. They were simply arranging to have it towed off the highway. Both of them testified that they would have preferred for the occupants to make their own arrangements if this had been possible. The occupants, however, were from Massachusetts, knew no one in the area, and made no reasonable or plausible suggestions for the disposition of the vehicle.

Since the vehicle was to be turned over to the towing company, from which the occupants could obtain it upon being released, the officers felt it imperative to inventory the vehicle and its contents. This was in accordance with Highway Patrol policy. One of the officers held up the contents of the trunk while the other, sitting in his

vehicle immediately to the rear, made a list of the items shown to him. A heavy rain was falling, and it was not possible for them to make a legible record otherwise.

It was in the course of inventorying the contents of the trunk that the contraband was discovered. Apparently it was in a regular army duffel bag which was snapped shut, but not locked. The covering flap with which such bags are equipped was not in place. The officer who discovered the bag at first thought it probably contained clothing, but when he attempted to lift it, he discovered that it was extremely heavy. It was for this reason that he unsnapped it and looked inside, thereupon discovering items which he suspected might be contraband.

 The Court of Criminal Appeals divided as to whether the scope of this inventory was or was not reasonable, the dissenting judge being of the opinion that officers making an inventory may not open a closed container. There is a division of authority on this subject.[2] It is well settled in this state that officers taking a vehicle into custody may open the trunk and inventory its contents. *Capps v. State,* 505 S.W.2d 727 (Tenn.1974). In *Capps,* however, it was not necessary for the officers to open a closed container.

In view of the purposes for which an inventory is conducted, that is, to protect the property of the owner and to protect officers from claims of negligence or violation of civil rights in the event property disappears or is damaged, we are of the opinion that officers may properly open unlocked containers, such as the duffel bag involved in this case, when necessary to make a realistic and meaningful inventory.

The record in this case does not sustain in any way the contention of appellant that the inventory procedure was a sham or pretext in order to conduct a search for narcotics. There is no indication that the officers had any reason to suspect that contraband items were in the automobile prior to opening the duffel bag. The State has not attempted to sustain the search of the closed container on the basis of probable cause. *See United States v. Ross,* —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

The officers testified in this case that they felt that they were responsible for both the vehicle and its contents. They had no way of knowing what the heavy duffel bag contained without looking into it. The risk of civil actions for damages against police officials in connection with the impoundment of vehicles is not remote or academic. *See Stypmann v. City and County of San Francisco,* 557 F.2d 1338 (9th Cir. 1977); *Addante v. Village of Elmwood Park,* 541 F.Supp. 497 (N.D.Ill.1982).

We are of the opinion that the conduct of the officers in the present case was reasonable and that it would not have violated any constitutional rights of appellant even if he had shown sufficient standing to enable him to challenge the search and seizure of the duffel bag.

The judgment of the Court of Criminal Appeals is affirmed at the cost of appellant.

FONES, C.J., and COOPER, BROCK and DROWOTA, JJ., concur.

2. *See* Annot., 48 A.L.R.3d 537 (1973).