**STATE of Tennessee, Plaintiff-Appellant,**

v.

**Terry Lee LUNSFORD,
Defendant-Appellee.**

Supreme Court of Tennessee.

Aug. 15, 1983.

David M. Himmelreich, Asst. Atty. Gen., Nashville, for plaintiff-appellant; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

Dale M. Quillen, Lucinda Smith Weaver, Nashville, for defendant-appellee.

OPINION

BROCK, Justice.

On April 9, 1980, at approximately 2:00 p.m., Officer Glen Taylor of the Henderson-

ville Police Department observed the appellee, Terry Lunsford, driving east on highway 31–E in a black Camaro. Earlier that day during his shift meeting Officer Taylor had been advised that appellee was a possible burglary suspect, and was told to be "on the lookout" for him.

When he first saw the appellee, Officer Taylor was sitting in his parked patrol unit; therefore, he radioed another unit in the vicinity "to keep a watch out" for appellee's vehicle. The order given at the shift meeting regarding the appellee was that if spotted, he was only to be observed.

Lieutenant Ray Holsberry had just arrived at the police department in a patrol unit when he heard Officer Taylor's radio transmission concerning appellee. He radioed back to Officer Taylor that there was an outstanding arrest warrant for Terry Lunsford in Davidson County.

After receiving this information Officer Taylor began casual pursuit of the appellee without siren or flashing lights. When he regained sight of appellee's vehicle Officer Taylor saw that appellee was in the left hand turn lane at New Shackle Island Road and 31–E waiting for the light to change. After making sure there was no oncoming traffic Officer Taylor swerved into the westbound lane of 31–E, turned on his lights and siren and stopped in front of appellee's car to prevent his turning onto New Shackle Island Road.

The appellee was then arrested, handcuffed, and put in the back seat of Officer Taylor's patrol car. Officer Taylor asked Lunsford if he would consent to a search of his car trunk. Lunsford asked if Officer Taylor had a search warrant and when Officer Taylor replied that he did not the appellee did not further respond.

Lieutenant Holsberry arrived shortly thereafter and instructed Officer Taylor to have appellee's car moved because it was blocking the intersection. It was towed a short distance to the Animal Inn Clinic parking lot where an inventory search was commenced. Several items found in the trunk, it was later discovered, were stolen property, and formed the bulk of the evidence to be used against the appellee.

The appellee filed a motion to suppress the evidence obtained as a result of the inventory search of his automobile, and after a hearing the motion was overruled. Appellee entered a plea of *nolo contendere* to the charge of concealing stolen property over the value of two hundred dollars ($200.00), and waived his right to a jury trial. The court found appellee guilty and fixed his punishment at not less than three nor more than three years in the penitentiary. The ruling on appellee's motion to suppress was specifically reserved for appeal. The Court of Criminal Appeals reversed the trial court's denial of the motion to suppress and we granted the state's application for permission to appeal.

In *Drinkard v. State*, 584 S.W.2d 650 (Tenn.1979), this Court set forth some guidelines regarding the impoundment of motor vehicles:

> "[I]f the circumstances that bring the automobile to the attention of the police in the first place are such that the driver, even though arrested, is able to make his or her own arrangements for the custody of the vehicle, or if the vehicle can be parked and locked without obstructing traffic or endangering the public, the police should permit the action to be taken rather than impound the car against the will of the driver and then search it. Just cause to arrest the driver is not, alone, enough; *there must also be reasonable cause to take his vehicle into custody.*" (Emphasis added.) 584 S.W.2d at 653.

The Florida Supreme Court has recently reached the same conclusion in *Miller v. State*, Fla., 403 So.2d 1307 (1981); *Sanders v. State*, Fla., 403 So.2d 973 (1981).

The appellee in the instant case was alone in his vehicle. He did not request to make other arrangements for its disposition, but,

the officer did not make known to the defendant his rights in this regard.

We have not indicated in any of our decisions that in order to avoid impoundment the arrested driver must have a companion passenger capable of assuming responsibility for the automobile contemporaneous with the arrest. In fact, there is language that indicates otherwise.

"[I]t would be a simple matter to alter the inventory form currently in use to provide for signed consent by the motorist to leave his car parked, locked and uninventoried, or its custody given to a friend, family member or personally chosen wrecker service. (Citations omitted.) The form could disclaim any police liability for subsequent loss or damage of property. Our courts have recognized the efficacy of signed consent forms in other contexts." *Drinkard v. State,* 584 S.W.2d at 654.

■ In the absence of probable cause to believe that the vehicle is carrying contraband, the overriding question is whether, under all the attendant circumstances, impoundment is reasonably necessary. *Drinkard v. State, supra; Miller v. State, supra,* at 1312–1313.

We so indicated in another recent case, *State v. Roberge,* Tenn., 642 S.W.2d 716 (1982). There, we affirmed a decision by the Court of Criminal Appeals in which it held that the impoundment of an out-of-state vehicle was reasonable under the circumstances.

"The vehicle was stopped by a patrolman who had been following it and had noticed it weaving across the eastbound lanes of an interstate highway in Henderson County. The trooper called for assistance. After stopping the vehicle he made arrangements with a local wrecker company to tow the vehicle off the interstate highway. It was raining heavily, and the arrest occurred after darkness had fallen. Both Sproul and Roberge were too intoxicated to be entrusted with driving the vehicle, and the juvenile female who was accompanying them did not have a driver's license. The officers consulted with her about driving the car, but she advised them that she was unable to do so. They therefore had no reasonable alternative, in our opinion, other than to have it towed. Sproul had suggested leaving it on the emergency strip of the interstate and had also requested that he be permitted to drive it to a rest stop nearby. Both of the officers concluded, properly in our opinion, that these alternatives were not reasonable."

■ One of the guidelines established in *Drinkard* that must be considered by law enforcement officers on the scene is whether "the vehicle can be parked and locked without obstructing traffic or endangering the public...." 584 S.W.2d at 653. To have allowed the vehicle in *Roberge* to remain on the emergency strip after nightfall during a heavy rain would have violated this stricture. Likewise, it would have been unreasonable to allow an obviously intoxicated individual to operate a motor vehicle on a public thoroughfare for any distance. In *Roberge,* the good common sense of the highway patrolmen prevailed.

In the case at bar Officer Taylor sought the appellee's consent to conduct a constitutionally permissible search of the automobile before impoundment. Appellee did not give consent but asked Officer Taylor if he had a search warrant. *There was no further conversation.* At that point the only means by which a lawful search of the trunk of appellee's automobile could be conducted was by warrant or inventory dependent upon necessary impoundment. No warrant was procured; therefore, the subsequent search stands or falls on the legality of the impoundment.

As regards the failure of the appellee to ask that he be allowed to make other arrangements for the disposition of his car, we think the holding of the Florida court in *Sanders v. State, supra,* is instructive; we quote approving therefrom the following:

924

"The [*Miller v. State*, Fla., 403 So.2d 1307 (1981)] holding requires the officer to advise a present, silent arrestee that his car will be impounded unless he can provide a reasonable alternative to impoundment. Our holding does not mandate that an arrestee must be advised of all available options to impoundment; such a *per se* rule would be unworkable because of changing conditions and circumstances. However, the extent of the consultation with an arrestee is a factor for the trial judge to consider in determining whether the impoundment was reasonable and necessary." 403 So.2d at 974.

Since it is the State that is offering the evidence disclosed by the arresting officer's "inventory search" of the defendant's vehicle and since its admissibility depends upon the legality of the impoundment, the burden is upon the State to justify the impoundment by demonstrating compliance with the rule of reasonable necessity set out in *Drinkard, supra,* and the other authority above discussed. *Hughes v. State,* Tenn., 588 S.W.2d 296 (1979); *Rippy v. State,* Tenn., 550 S.W.2d 636 (1977). This the State has failed to do. The defendant's motion to suppress should have been granted, as the Court of Criminal Appeals has held.

The State contends that the instant case is controlled by *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). We reject that contention. *Opperman* "involved a parked, unoccupied vehicle in violation of overnight parking restrictions, whereas, in the instant case there was no indication that [appellee] could not have ... arranged to have it picked up by ... someone else." *State v. Slockbower,* 79 N.J. 1, 397 A.2d 1050, 1052 (1979). The State argues: "Since defendant in the instant case was placed under custodial arrest, his vehicle, when sitting in the Animal Inn parking lot, was just as much abandoned as the vehicle [in] *Opperman.*" We cannot accept this fiction; it ignores the fact that the appellant in *Drinkard* had also

been arrested when he requested that his companion be allowed to take possession of his car as an alternative to impoundment.

The decision in *South Dakota v. Opperman, supra,* has limited application to the case at bar; the issue there concerned the constitutionality of a routine inventory search of an automobile lawfully impounded. Here, we are concerned with the propriety of the impoundment.

We do not challenge the *bona fides* of the decision of Officer Taylor to arrest appellee for second degree burglary; nor do we challenge the officer's right to cause the automobile to be removed from the highway; we do negate the necessity and, therefore, the legality of taking Lunsford's car into custody.

Since the impoundment of appellee's car was wrongful, the subsequent inventory search was without legal justification and violative of the Fourth Amendment and of Article I, Section 7, Constitution of Tennessee. The judgment of the Court of Criminal Appeals is, therefore, affirmed.

Costs incurred on appeal are adjudged against the appellant.

FONES, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.