IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 17, 2001 Session

## STATE OF TENNESSEE v. JERRY LANE RUBERT

**Direct Appeal from the Circuit Court for Maury County**
**No. 10,461     Robert L. Holloway, Judge**

------------

**No. M2000-00914-CCA-R3-CD - Filed October 25, 2001**

------------

A Maury County grand jury indicted the defendant, Jerry Lane Rubert, for two counts of aggravated kidnapping and three counts of especially aggravated rape. The defendant moved to suppress the evidence seized from his vehicle, as well as the evidence and statements derived from that seizure, on the grounds that the evidence was illegally seized. The trial court denied the defendant's motion, and at trial the prosecution introduced the evidence at issue. After the conclusion of this trial, a Maury County jury found the defendant guilty on all counts. The defendant now brings this appeal, challenging the trial court's denial of his motion to suppress. After reviewing the record and the applicable law, we find that the defendant's allegations do not merit relief, and therefore affirm his convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

John S. Colley, III, Columbia, Tennessee, for appellant, Jerry Lane Rubert.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; Mike Bottoms, District Attorney General; and Daniel J. Runde, Assistant District Attorney, for appellee, State of Tennessee.

# OPINION

## Factual Background

Sometime around midnight on June 21, 1997, Joe Kelley and Tiffany Kelley[1] went to a local swimming spot to swim with friends. Although their friends went to the swim site immediately upon arrival, Mr. and Ms. Kelley remained in the vehicle while Ms. Kelley finished her fast-food meal. Shortly after their friends left Mr. and Ms. Kelley in the vehicle alone, the defendant parked his vehicle directly behind Ms. Kelley's vehicle. Mr. Kelley exited the vehicle, and the defendant, who was holding a flashlight and a gun, told Mr. Kelley to give him all of his money. Mr. Kelley threw three (3) dollars on the ground, and the defendant then ordered Mr. and Ms. Kelley to lay face down on the ground while he searched their vehicle.

Once Mr. and Ms. Kelley were on the ground, he placed thumb-cuffs on them and subsequently tied their hands with white nylon rope. He then ordered Mr. Kelley into the back of his hatchback vehicle, which the victims described as a blue or brown two-door hatchback Toyota with two (2) NASCAR number two (2) emblems and an inoperable passenger side door. The defendant ordered Ms. Kelley to sit in the passenger seat.[2] He then drove the victims into a country field and ordered Ms. Kelley out of the vehicle.

After talking to them for several minutes, the defendant told the victims that the reason that he brought them there was in order to have sex with Ms. Kelley. He also told them that if they failed to cooperate, they would "not make it out of the woods alive." After unsuccessfully pleading with the defendant not to follow through with his plans and offering him her jewelry and her vehicle in exchange, Ms. Kelley, still bound, accompanied the defendant on one of two "walks". During these two walks, the defendant raped her twice vaginally and forced her to perform oral sex on him once. The defendant then released the victims in the vicinity of their vehicle at sometime close to sunrise.

On October 11, 1997, patrolling police officers drove by a stopped vehicle that had its headlights on and that was parked partially on the road. The officers turned their vehicle around to investigate further. The officers observed that since they had first noticed the vehicle, its headlights had been extinguished. Upon further inspection, they discovered that there were no occupants in the vehicle. After hearing the sound of limbs breaking in the nearby woods, one officer went into the forest to investigate the noise and found the defendant lying down in the brush. The defendant claimed that he had entered the woods for the purpose of relieving himself. While this officer was investigating the noise, the other officer saw an open container in the defendant's vehicle, and when he reached into the vehicle through an open window to obtain the container, he noticed a credit card in plain view. When the defendant returned to his vehicle with the officer who had found him, the

---

[1]    Joe Kelley and Tiffany Kelley are not related, but merely share the same last name. They were dating at the time that the crimes were committed and were still dating at the time of trial.

[2]    In order to do so, Ms. Kelley had to enter the vehicle through the driver-side door and climb into the passenger seat.

officer who found the credit card asked the defendant his name and ascertained that the credit card did not belong to the defendant.[3] Inside the vehicle, the officer also identified an unregistered pistol located in plain view. The police officer also searched a camouflage fanny pack located next to the pistol. Inside the fanny pack, he discovered a homemade mask, latex gloves, blindfolds, and white nylon rope.

The officers arrested the defendant for a violation of the open container law and for carrying an unregistered firearm, both misdemeanors. Subsequently, the officers had the defendant's vehicle impounded in order to search it more thoroughly and because it was partially obstructing traffic. After the car was impounded, the defendant consented to another search of his vehicle. This search revealed another credit card, later determined to be stolen, a hammer, more nylon rope, and a book of police scanner frequency codes.

After the police arrested the defendant for these misdemeanor charges, they provided Ms. Kelley with a picture of the defendant. Based on this photograph, Ms. Kelley identified the defendant as her rapist. Ms. Kelley also identified the defendant's vehicle as the vehicle driven by her attacker.[4] Based on Ms. Kelley's identifications and on the evidence obtained through the searches of the vehicle, the police interrogated the defendant regarding his involvement in the victims' rapes and kidnappings. In response, the defendant made statements which, while not a confession, did tend to corroborate some of the victims' statements to police. Thereafter, the police arrested the defendant for those crimes. Both Mr. and Ms. Kelley identified the defendant as their rapist/kidnapper at trial.

The defendant argues that the trial court erred by denying the defendant's motion to suppress the fruits of an illegal search and seizure, because (1) the police improperly placed the defendant in custodial arrest for his violation of two misdemeanors, and therefore the search incident to arrest was improper, and (2) the police improperly seized the defendant's vehicle. Furthermore, the defendant alleges that the evidence found in the defendant's fanny pack should have been suppressed pursuant to his motion in limine because the evidence's potential prejudicial effect outweighed its probative value. For the forgoing reasons, we find that the defendant's claims lack merit.

## Standard of Review for Denial of Motion to Suppress

The defendant challenges the trial court's denial of his motion to suppress on several grounds. We note that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn.1996)). However, the application of the law to these fact-findings is a question of law that this court reviews de novo. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997); Odom, 928 S.W.2d at 23.

---

[3]     While the defendant claimed that the credit card belonged to a friend who had left the card in the vehicle, the police officers later learned that this credit card was stolen.

[4]     Mr. Kelley could not positively identify the defendant as his kidnapper until trial.

## Defendant's Expectation of Privacy Regarding the Abandoned Vehicle

The state challenges the defendant's ability to contest the validity of the search of his vehicle, contending that the defendant abandoned his vehicle before the police searched it, thereby negating his expectation of privacy regarding his vehicle and its contents and forfeiting his right to contest a search of the vehicle. When denying the defendant's motion to suppress, the trial court found that the defendant did abandon his vehicle when he fled from the police into the nearby brush. The police officer who discovered the defendant testified that he found the defendant 75-100 feet away from his vehicle, laying down in the brush apparently hiding. We find that the evidence in the record is sufficient to support this finding of fact.

When an individual flees from a vehicle, he or she is deemed to have abandoned the vehicle, thereby losing an expectation of privacy in that vehicle. See Campbell v. State, 469 S.W.2d 506 (Tenn. Crim. App. 1971); Prock v. State, 455 S.W.2d 658 (Tenn. Crim. App. 1969). Therefore, we find that the trial court properly determined that the defendant "abandoned his vehicle or at least surrendered any expectation of privacy by fleeing from the car and officers, by hiding in the brush and weeds, and by having to be brought to the car by an officer with his weapon drawn." However, even if the defendant had a legitimate expectation of privacy in the vehicle that he abandoned, his challenge of the search would not merit relief.

## Propriety of Arrest and Subsequent Search Incident to Arrest

The defendant committed two misdemeanors in the presence of police officers, a violation of the open container law and carrying an unregistered firearm. Tennessee Code Annotated Section 40-7-118(b)(1) (1997) mandates that police officers who witness a misdemeanor committed in their presence issue a citation in lieu of affecting a custodial arrest, unless one of eight exceptions apply:

(1) The person arrested requires medical examination or medical care, or if such person is unable to care for such person's own safety;

(2) There is a reasonable likelihood that the offense would continue or resume, or that persons or property would be endangered by the arrested person;

(3) The person arrested cannot or will not offer satisfactory evidence of identification, including the providing of a field-administered fingerprint or thumb print which a peace officer may require to be affixed to any citation;

(4) The prosecution of the offense for which the person was arrested, or of another offense, would thereby be jeopardized;

(5) A reasonable likelihood exists that the arrested person will fail to appear in court;

(6) The person demands to be taken immediately before a magistrate or refuses to sign the citation;

(7) The person arrested is so intoxicated that such person could be a danger to such person or to others; or

(8) There are one (1) or more outstanding arrest warrants for the person.

Tenn. Code. Ann. § 40-7-118(b)(1), (c) (1997). Moreover, if the arrestee is placed under custodial arrest in violation of this statute, any search performed incident to that unlawful custodial arrest is invalid. See State v. Adam George Colzie, No. M1998 00253 CCA R3 CD, 1999 WL 1074111, at *4 (Tenn. Crim. App. at Nashville, Nov. 30, 1999).

In the instant case, the trial court found that the police properly placed the defendant under custodial arrest for his commission of two misdemeanors because, inter alia, the defendant fled before the police apprehended him, therefore indicating a reasonable likelihood that the defendant would fail to appear in court. See Tenn. Code Ann. § 40-7-118(c)(5) (1997). The trial court based this finding on the police officers' testimony that the defendant fled from his vehicle and hid from the police officers. We find that the evidence in the record is sufficient to support this finding.

As our supreme court noted in State v. Walker, 12 S.W.3d 460, 466 (Tenn. 2000), "Tennessee's 'cite and release' statute works on an 'honor system,' operating under the assumption that the misdemeanant will act in good faith . . . ." Id. (referring to the arrestee's duty to furnish accurate identification). Inherent in this honor system is the defendant's duty to properly identify himself, id., and to appear in court on the date specified in the citation. See Tenn. Code Ann. § 40-7-118(c)(3), (5) (1997). Without assurance of the defendant's identity and cooperation, a police officer may justifiably place the defendant under custodial arrest. See id. As noted above, the trial court found that the arresting police officer had reason to believe that the defendant would not appear in court,[5] and therefore we hold that the trial court properly found that the police legally placed the defendant under custodial arrest.

Once an arrestee is properly placed under custodial arrest, the police may conduct a search incident to arrest. State v. Crutcher, 989 S.W.2d 295 (Tenn. 1999). If the arrestee is the occupant of a vehicle, the scope of the search incident to arrest expands to the entire passenger compartment of the vehicle and any containers found therein. New York v. Belton, 453 U.S. 454, 457, 101 S. Ct. 2860, 2862, 69 L. Ed. 2d 768 (1981); Crutcher, 989 S.W.2d 295. In the instant case, when the police conducted their search of the passenger compartment, they discovered an unregistered firearm, a credit card that did not belong to the defendant, and a fanny pack containing several items that the police characterized as burglary tools, a mask, blindfolds, nylon rope, and gloves These items were discovered pursuant to a lawful search incident to arrest and therefore were legally seized. Thus, this issue lacks merit.

## Seizure of the Defendant's Vehicle

The defendant next contends that the impoundment of the defendant's vehicle and subsequent search were unlawful because the state did not prove that the impoundment was necessary. The

---

[5] Although the arresting officer did not articulate this reason for arresting in lieu of citation, the standard for reviewing the propriety of a custodial arrest of a misdemeanant appears to be whether there is an objective basis for arresting the misdemeanant. See State v. Walker, 12 S.W.3d 460, 464 (Tenn. 2000). Furthermore, although Walker indicates that an arresting officer must note his or her reason for arresting the misdemeanant rather than citing him on the arrest ticket, see Walker, 12 S.W.3d at 464 n.10 (citing Tenn. Code Ann. § 40-7-118(j) (1997)), the defendant in the instant case does not argue that the custodial arrest was invalid on this basis. Therefore, we deem this argument waived. See Tenn. R. Crim. App. 10(b).

defendant cites State v. Lunsford, 655 S.W.2d 921 (Tenn. 1983), for the proposition that police may not impound a vehicle unless impoundment is reasonably necessary. However, Lunsford's necessity requirement only applies if the police do not have probable cause to believe that the vehicle contains contraband. Lunsford, 655 S.W.2d at 923. Therefore, the inquiry that is dispositive of the legality of the search is not whether the impoundment was necessary but whether the police had probable cause to search the defendant's vehicle. Because the search of the passenger compartment revealed contraband, namely an unregistered firearm, a credit card that did not belong to the defendant, and burglary tools, the police had probable cause to search the entire vehicle. The police may conduct such a search of a vehicle based on probable cause either immediately or pursuant to an inventory search after the vehicle has been impounded. Therefore, the police in the instant case correctly inventoried the defendant's vehicle after they impounded it. Accordingly, we find that the evidence discovered pursuant to the inventory search was legally obtained and therefore not the fruit of an illegal search.

### Denial of the Defendant's Motion in Limine

The defendant alleges that the trial court erroneously denied his motion in limine to exclude the contents of the camouflage fanny pack as evidence at trial because the potential prejudicial effect of this evidence outweighed its probative value. When evaluating a trial court's ruling on a Tennessee Rule of Evidence 403 motion to exclude evidence, the initial inquiry is whether the evidence offered was relevant to the case under Tennessee Rule of Evidence 401.

> The determination of whether evidence is relevant, or, if relevant, should be excluded for one of the reasons set forth in Rule 403, addresses itself to the sound discretion of the trial court. State v. Hill, 885 S.W.2d 357, 361 (Tenn. Crim. App. 1994). In deciding these issues, the trial court must consider, among other things, the questions of fact that the jury will have to consider in determining the accused's guilt as well as other evidence that has been introduced during the course of the trial.

State v. Dulsworth, 781 S.W.2d 277, 287 (Tenn. Crim. App. 1989).

> If a trial court in the exercise of its discretion finds that evidence is relevant within the meaning of Rule 401, and the accused is not entitled to have the evidence excluded for one of the grounds set forth in Rule 403, this Court will not interfere with the exercise of this discretion unless it appears on the face of the record that the trial court clearly abused its discretion. State v. Hayes, 899 S.W.2d 175, 183 (Tenn. Crim. App. 1995).

State v. Williamson, 919 S.W.2d 69, 79 (Tenn. Crim. App. 1995).

Tennessee Rule of Evidence Rule 403 permits a court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Our supreme court has stated that unfair prejudice is "[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." State v. DuBose, 953 S.W.2d 649, 654

(Tenn. 1997) (citing State v. Banks, 564 S.W.2d 947, 951 (Tenn.1978)); see also State v. McCary, 922 S.W.2d 511, 515 (Tenn. 1996).

In State v. Banks, the supreme court recognized the "policy of liberality in the admission of evidence in both civil and criminal cases." Banks, 564 S.W.2d at 949. When implementing their policy, the trial court must weigh the probative value against prejudicial effect. Furthermore, this court cannot substitute its judgment for that of the trial court or declare error absent a finding that the trial court abused its discretion. State v. Robinson, 930 S.W.2d 78, 85 (Tenn. Crim. App. 1995) (citing State v. Melson, 638 S.W.2d 342 (Tenn. 1982)).

As noted above, we begin our analysis of the instant case by determining whether the contents of the fanny pack, namely the white nylon rope, mask, gloves, and pair of blindfolds, were relevant to the case. The trial court ruled that all of the contents of the fanny pack were admissible because they were the type of items used to bind and control individuals, and the defendant was charged with binding and controlling the victims in the instant case. Arguably, the white nylon rope found in the fanny pack could be relevant to the case, as it is the same type of rope that the victims reported their kidnapper/rapist used to bind them. However, the remaining items, the mask, blindfolds, and gloves, were not used by the kidnapper/rapist. Moreover, no evidence was presented to establish the relevancy of the contents of the fanny pack on other grounds. See Tenn. R. Evid. 401.

However, regardless of whether the evidence was relevant, the potential prejudicial effect of this evidence, with the exception of the white nylon rope, outweighs its probative value under a Rule 403 analysis, as we can discern no probative value to be gained by admission of this evidence. The victim's kidnapper/rapist did not use a mask, gloves, or blindfolds. Moreover, the evidence was potentially prejudicial. A police officer who testified on behalf of the state characterized the contents of the fanny pack as "burglary tools," suggesting the defendant's criminal propensity.

Although it was error to admit the mask, gloves, and blindfolds into evidence, we find that error to be harmless because defense counsel fully developed the fact that these items were not used by the kidnapper/rapist on cross-examination of a state's witness. See Jones v. State, 489 S.W.2d 44 (Tenn. Crim. App. 1972) (finding that the erroneous admission of testimony regarding a revolver that was not used in the commission of the offense at issue was harmless error because there was no proof that the admission of this evidence affected the outcome of the trial and because defense counsel fully developed the issue on cross-examination).

Furthermore, the evidence of the defendant's guilt was strong, suggesting harmless error. See State v. Roger Clayton Davis, C.C.A. No. 170, 1989 WL 112748, at *3 (Tenn. Crim. App. at Knoxville, Sept. 29, 1989) (finding that the erroneous admission of a sawed-off shotgun that was not used in the commission of the instant crime was harmless error because it most likely did not affect the verdict); State v. Larry Wayne Sheffield, No. 85-362-III, 1987 WL 6084, at *3 (Tenn. Crim. App. at Nashville, Feb. 6, 1987) (finding that the erroneous admission of a double-edged knife that was not used to commit the instant crime was harmless error because the trial court gave curative instructions and because the evidence of the defendant's guilt was overwhelming). The two victims identified the defendant as their kidnapper/rapist; the sketch of the kidnapper/rapist drawn at the victims direction closely resembles the defendant; Ms. Kelley positively identified the defendant's vehicle as the vehicle driven by her kidnapper/rapist; and the victims' description of the kidnapper/rapist's vehicle closely resembles the defendant's vehicle, including the vehicle's color,

approximate model year, make, interior, and inoperable passenger-side door. Therefore, we find that the trial court's denial of the defendant's motion <u>in limine</u> was harmless error. <u>See</u> Tenn. R. Crim. P. 52(a).

## **<u>Conclusion</u>**

For the forgoing reasons, we find that none of the defendant's allegations merit relief. Accordingly, the judgment of the trial court is AFFIRMED.

_____

JERRY L. SMITH, JUDGE