# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 9, 2012

## STATE OF TENNESSEE v. JOHN BEASLEY SEAY

**Appeal from the Criminal Court for Wilson County**
**No. 10-CR-544    John D. Wootten, Jr., Judge**

---

**No.  M2011-02769-CCA-R3-CD - Filed July 16, 2013**

---

Appellant, Joseph Beasley Seay, was indicted by the Wilson County Grand Jury for one count of possession of more than .5 grams of cocaine; one count of driving on a canceled, suspended, or revoked license; and one count of driving on a canceled, suspended, or revoked license, second offense.  Appellant filed a motion to suppress the cocaine discovered during the search of a pill fob on his key ring.  He subsequently pled guilty to one count of possession of more than .5 grams of cocaine and reserved a certified question for appeal. The remaining counts were dismissed.  Pursuant to the plea agreement, Appellant was sentenced to eight years as a Range I, standard offender.  After a review of the record on appeal, we have concluded that the trial court did not err in denying Appellant's motion to suppress. Therefore, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Adam W. Parrish, Lebanon, Tennessee, for the appellant, Joseph Beasley Seay.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Tom P. Thompson, District Attorney General, and Linda Walls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

On March 11, 2010, Officer Erick Brockman, with the Lebanon Police Department, was on patrol.  While on patrol, he saw an older Chevrolet Impala parked on the roadway.

He could not tell if the car engine was running. Officer Brockman drove around the block twice. He decided to run the tag on the Chevrolet Impala. The results were that the tag belonged to a 1990's model Pontiac. Officer Brockman ran the tags twice and the results were the same both times.

Officer Brockman decided to investigate. The Appellant was in the driver's seat and a female standing outside next to the car on the driver's side. He turned on his blue lights, got out of his patrol car, and approached the car in question. Appellant exited the vehicle and met Officer Brockman between his car and the patrol car.

As Appellant walked to meet Officer Brockman, he was carrying his keys, and he placed them on the trunk of the Impala. Officer Brockman asked Appellant for his license. Appellant replied that he did not have his license at that time. He stated that he had an ID and that he was in the process of getting his license back. Appellant told Officer Brockman that the tag on the Impala belonged to his Pontiac. He stated that he switched the tags because the Impala had an antique tag and that tag only allowed the Impala to be driven at certain times. Appellant admitted to Officer Brockman that he was driving the Impala when it was prohibited under the laws governing the use of antique tags.

Officer Brockman placed Appellant under arrest based upon the fact that Appellant did not have a valid driver's license. Officer Brockman placed Appellant in the patrol car and retrieved Appellant's car keys. When Officer Brockman looked at the car keys, he noticed a pill fob on the keyring. He opened it and discovered that it contained cocaine. Officer Brockman called a tow truck to tow the car because the tags on the car were issued for a different car.

Officer Brockman stated that it would have been necessary to search Appellant's keychain because the keys would have been given to the tow truck driver. Officer Brockman also stated that he would not have given the fob to the driver because the driver did not need to be responsible for an illegal substance. He stated that he would have inventoried the pill fob on the key ring because of either Appellant's arrest or the inventory of the vehicle. Officer Brockman conceded that Appellant did not consent to the search of either his vehicle or the pill fob on the key ring.

On October 12, 2010, the Wilson County Grand Jury indicted Appellant for one count of possession of more than .5 grams of cocaine; one count of driving on a canceled, suspended, or revoked license; and one count of driving on a canceled, suspended, or revoked license, second offense. On November 30, 2011, Appellant filed a motion to suppress all evidence seized during the stop conducted by Officer Brockman. The motion

was heard on December 6, 2011. At the conclusion of the hearing, the trial court denied Appellant's motion to suppress.

On December 16, 2011, Appellant entered a guilty plea to one count of possession of .5 grams or more of cocaine. Pursuant to the plea, Appellant was sentenced to eight years as a Range I, standard offender. The other two counts were dismissed. With consent of the both the State and trial court, Appellant purported to reserve a certified question of law which is the basis of this appeal.

## ANALYSIS

Appellant entered a guilty plea and attempted to reserve a certified question of law for appeal pursuant to Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure. In pertinent part, Rule 37(b) of the Tennessee Rules of Criminal Procedure provides:

> The defendant or the state may appeal any order or judgment in a criminal proceeding when the law provides for such appeal. The defendant may appeal from any judgment of conviction:
>
> (1) on a plea of not guilty; or
>
> (2) on a plea of guilty or nolo contendere, if:
>
> (A) the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved – with the consent of the state and of the court—the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:
>
> (I) the judgment of conviction or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review;
>
> (ii) the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
>
> (iii) the judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or document reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case; . . . .

Appellant's certified question of law is as follows:

Whether the word "drive" in T.C.A. § 55-50-504, for the purposes of determining whether a misdemeanor was committed in the presence of a law enforcement officer, would include those situations in which the officer sees an individual in the driver sea[t] of the vehicle (actual control) on a public highway as defined within the statute with keys in his possession as he exits the vehicle as he is seized for the investigation of a registration violation (wrong tag on vehicle) but the law enforcement officer admittedly does not witness the vehicle in motion on that public highway, and if it does, whether a search of the keys and containers thereon is a lawful search incident to arrest under Article I, Section seven of the Tennessee Constitution and the Fourth Amendment of the United States Constitution when the defendant is within reach of those keys and the contents of the containers thereon at the time of arrest, or if the word "drive" in T.C.A. § 55-50-504 excludes such a situation, whether an inventory search conducted before the towing of the vehicle for the registration violation includes keys and containers thereon that have been placed on the trunk lid by the defendant is a lawful search or would result in inevitable discovery under Article I, Section Seven of the Tennessee Constitution and the Fourth Amendment of the United States Constitution?

Appellant's certified question is essentially a two-part question. He argues that his arrest was unlawful because there was no direct proof that he was driving the car and that the subsequent search of the pill fob on the key ring was an illegal search.

The State initially argues that Appellant has not met the requirements under Rule 27(a) of the Tennessee Rules of Appellate Procedure because he failed to include a Statement of the Issues, a Table of Authorities, and a Table of Contents in his brief. We acknowledge the State's argument that failure to comport with Rule 27 of Tennessee Rules of Appellate Procedure is sufficient for us to strike his brief. Nonetheless, we have decided to address Appellant's substantive issues.

-4-

"This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise." *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures by government agents. *See* U.S. Const. amend. IV; Tenn. Const. art. I, §7. "'These constitutional provisions are designed to "'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'"" *State v. James David Moats*, No. E2010-02013-SC-R11-CD, 2013 WL 1181967, ___ S.W.3d ___, at *4 (Tenn. Mar. 22, 2013)((quoting *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002) (quoting *Camara v. Mun. Ct.*, 387 U.S. 523, 528, 87(1967))). The Tennessee Supreme Court has noted previously that "[a]rticle I, [section] 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment [of the United States Constitution]," and that federal cases applying the Fourth Amendment should be regarded as "particularly persuasive." *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968).

Under both constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)); *see also State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003).

One of these narrow exceptions occurs when a law enforcement officer stops an automobile based on probable cause or reasonable suspicion that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *State v. Randolph*, 74 S.W.3d

330, 334 (Tenn. 2002); *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997). If the officer has probable cause to believe that a traffic violation has occurred, any seizure will be upheld even if the stop is a pretext for the officer's subjective motivations in making the stop. *See Whren*, 517 U.S. at 813-15; *Vineyard*, 958 S.W.2d at 734-35. Another such exception occurs when a law enforcement officer initiates an investigatory stop based upon specific and articulable facts that the defendant has either committed a criminal offense or is about to commit a criminal offense. *Terry v. Ohio*, 392 U.S. 1, 20-21(1968); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). This narrow exception has been extended to the investigatory stop of vehicles. *See United States v. Brignoni–Ponce*, 422 U.S. 873, 881 (1975); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). In evaluating whether the law enforcement officer had reasonable suspicion to justify an investigatory stop, this Court must consider the totality of the circumstances, which includes the personal observations and rational inferences and deductions of the trained law enforcement officer making the stop. *See Terry*, 392 U.S. at 21; *Binette*, 33 S.W.3d at 218; *Watkins*, 827 S.W.2d at 294. Objective standards apply, rather than the subjective beliefs of the officer making the stop. *State v. Day*, 263 S.W.3d 891, 903 (Tenn. 2008); *State v. Norword*, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996). "An officer making an investigatory stop must be able to articulate something more than an 'inchoate and unparticularized suspicion or 'hunch.'" *Day*, 263 S.W.3d at 902 (quoting *Terry*, 392 U.S. at 27). This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. *Id.*; *Watkins*, 827 S.W.2d at 294 (citing *United States v. Cortez*, 449 U.S. 411 (1981)). A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him. *Terry*, 392 U.S. at 21.

In the case herein, it is clear that Appellant was "seized" within the meaning of the state and federal Constitutions. Officer Brockman testified that he initiated a traffic stop of Appellant's car when he activated his blue lights and pulled up behind Appellant's car. Thus, in order for the stop to be constitutionally valid, Officer Brockman must have at least had a reasonable suspicion, supported by articulable facts, that Appellant had committed, or was about to commit an offense.

Officer Brockman testified that on the date in question he was working in the Inman Court area which is considered a high crime area with regard to drugs and guns. The officer was circling the block when he noticed Appellant sitting in the driver seat and an unidentified female standing next to the car talking to Appellant. Officer Brockman ran the tags of the car and was told by the dispatcher that the tag belonged to a Pontiac, but the car being driven by Appellant was a Chevrolet Impala.

This Court has previously held that an officer's discovery from a law enforcement agency that the tags on a vehicle are not registered to the vehicle in question is sufficient reasonable suspicion to support an investigatory stop. *See State v. Rhymer*, 915 S.W.2d 465, 467-68 (Tenn. Crim. App. 1995); *State v. David M. Whitman*, No. M2004-03063-CCA-R3-CD, 2005 WL 3299817, at *5-6 (Tenn. Crim. App., at Nashville, Dec 5, 2005), *perm. app. denied*, (Tenn. May 1, 2006); *State v. Johnny Darryl Williams-Bey*, No. M2002-00950-CCA-R3-CD, 2003 WL 21997741, at * 5 (Tenn. Crim. App., at Nashville, Aug. 21, 2003), *perm. app. denied*, (Tenn. Dec. 22, 2003). Therefore, Officer Brockman had sufficient reasonable suspicion to support an investigatory stop.

**Driving the Car**

We now turn to the question of Appellant's arrest for driving on a canceled, suspended, or revoked license. Appellant argues that Officer Brockman did not see Appellant in the car while the car was in motion on a public street as set out in the statute.

Officer Brockman testified that when he pulled up behind Appellant's car, Appellant was sitting in the driver's seat. A female was standing outside of the car talking to Appellant. Appellant got out of the car and walked to meet Officer Brockman. Appellant was carrying the keys to the car as he walked.

Appellant is correct that according to Officer Brockman's testimony he never saw the car in motion. However, an officer does not need to see a vehicle in motion for the facts to support a conviction for driving on a canceled, revoked or suspended license. This Court has determined that circumstantial evidence that a defendant was driving on a public highway is sufficient to support a conviction for driving on a canceled, suspended, or revoked license. *See State v. Raymond Carroll*, No. 02C01-9308-CC-00179, 1995 WL 568474, at *2-3 (Tenn. Crim. App., at Jackson, Sept. 27, 1995); *State v. Michael Davidson*, No. 03C01-9306-CR-00198, 1994 WL 615738, at *1 (Tenn. Crim. App., at Knoxville, Nov. 7, 1994).

Therefore, Appellant's contention that Officer Brockman was required to see the vehicle in motion on a public highway to support the conviction cannot stand. Furthermore, the evidence is sufficient to support the conclusion that Appellant was driving. He was parked on the actual roadway, not in a designated parking area. Officer Brockman saw Appellant sitting in the driver's seat behind the steering wheel of the car and speaking to a female who was standing outside of the car on the driver's side. Additionally, when Appellant got out of the car to walk towards Officer Brockman's car, Appellant was carrying his car keys.

**Search of Pill Fob**

Under both the state and federal constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *Yeargan*, 958 S.W.2d at 629; *see also Garcia*, 123 S.W.3d at 343. However, an inventory search is permissible. An "inventory search . . . is ostensibly to protect the occupant of the vehicle against loss of his property or the law enforcement agency against the occupant's claim for failure to guard against such loss." *State v. Donald Curtis Reid*, No. M1999-00058-CCA-R3-CD, 2000 WL 502678, at *7 (Tenn. Crim. App., at Nashville, Apr. 28, 2000) (quoting *State v. Gaut*, 357 So.2d 513, 516 (La. 1978)). Further, our supreme court in *Drinkard v. State*, 584 S.W.2d 650 (Tenn. 1979), established the following guideline:

> [I]f the circumstances that bring the automobile to the attention of the police in the first place are such that the driver, even though arrested, is able to make his or her own arrangements for the custody of the vehicle, or if the vehicle can be parked and locked without obstructing traffic or endangering the public, the police should permit the action to be taken rather than impound the car against the will of the driver and then search it. Just cause to search the driver is not alone, enough; there must also be reasonable cause to take his vehicle into custody.

*Id.* at 653. In other words, the burden is on the State to show that an impoundment was necessary, i.e., that there were reasonable grounds for the impoundment. *Id.* at 654. In *Drinkard*, there was a passenger who was available to take charge of the vehicle. *Id.* This Court has also held that it is appropriate to impound a vehicle despite the failure of an officer to ask Appellant about an alternative solution when there is no reasonable or plausible alternative such as a passenger at the scene to take possession of the car immediately. *See State v. Jeffrey L. Hammons*, No. M1999-00756-CCA-R3-CD, 2000 WL 924633, at *3-4 (Tenn. Crim. App., at Nashville, June 30, 2000), *perm. app. denied*, (Tenn. Feb. 20, 2001). *State v. William David Harmon*, No. 46, 1990 WL 149, at *3 (Tenn. Crim. App. at Knoxville, Jan. 4, 1990), *perm. app. denied*, (Tenn. Mar. 5, 1990).

Before an inventory search, the officer must advise the defendant that the car will be impounded unless he can provide a reasonable alternative. *State v. Lunsford*, 655 S.W.2d 921 (Tenn. 1983). The extent of the consultation with the defendant is a factor to determine whether an impoundment is reasonable and necessary. *Id.* Moreover, an inventory search

must not be pretextual. *State v. Glenn*, 649 S.W.2d 584, 587-88 (Tenn. 1983). The guidelines of *Drinkard* "must be considered by law enforcement officers on the scene." *Lunsford*, 655 S.W.2d at 923. However, there is no "mandate" that an "arrestee must be advised of all available options to impoundment" as this would create a "per se rule [rendered] . . . unworkable because of changing conditions and circumstances." *Id.* (quoting *Sanders v. State*, 403 So.2d 973, 974 (Fla. 1981)).

In the case of *State v. Roberge*, 642 S.W.2d 716 (Tenn. 1982), our supreme held that when the circumstances justified an impoundment, the inventory search would include the opening of unlocked containers, such as a duffle bag in that instance. 642 S.W.2d at720. "The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained" therein. *California v. Acevedo*, 500 U.S. 565, 580 (1991).

In the case at hand, there was no passenger with Appellant to drive his car. Furthermore, Officer Brockman had been informed that the tags on the car belonged to a different car. Appellant himself told Officer Brockman that he had switched the tags because the Impala had an antique tag and was only allowed to be driven at certain times. Therefore, if Officer Brockman had allowed someone else to drive the car, he would have been allowing someone else to break the law. There is ample support for the towing of Appellant's car. Because there was a valid reason to tow Appellant's car, Officer Brockman's inventory search correctly included the pill fob on the key ring. Officer Brockman saw the pill fob on the key ring in Appellant's possession, and the search of the container was necessary before the keys were given to the tow truck driver.

The evidence does not preponderate against the denial of the motion to suppress the evidence. Appellant is not entitled to relief on issues contained in his certified question of law.

## **CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE