**STATE of Tennessee, Plaintiff-Appellant,**

v.

**Ray Allen CABAGE, Defendant-Appellee.**

Supreme Court of Tennessee,
at Knoxville.

March 21, 1983.

William M. Leech, Jr., Atty. Gen., J. Andrew Hoyal, II, Asst. Atty. Gen., Nashville, Charles Fels, Asst. Dist. Atty. Gen., Knoxville, for plaintiff-appellant.

John Douglas Godbee, Knoxville, for defendant-appellee.

DROWOTA, Justice.

We granted the State's Rule 11 application to consider the suppression of evidence, found in a closed and locked container, obtained as a result of a routine inventory search of Defendant's truck, which truck was seized pursuant to T.C.A. § 52–1443 of the Tennessee Drug Control Act.

On June 5, 1979, an officer of the Knoxville Police Department, in response to a complaint that a drunk person was on the premises, went to the Pride Car Wash in Knoxville. When he arrived he found the Defendant's truck parked near the vacuum hose island, and he found the Defendant holding onto the open passenger door of his pickup truck with one hand and holding a vacuum hose with the other for support. The officer noticed the odor of alcohol on the Defendant, and the eyes and actions of the Defendant indicated that he was drunk. He was then placed under arrest for public drunkenness.

A body search uncovered a brown paper bag with green plant material appearing to be marijuana. The Defendant was then arrested for possession, handcuffed and placed in the police car.

The Defendant was alone and his truck was partially blocking access to the car wash and the manager wanted the officers to remove it. Since no one was with the Defendant to move his truck and since he obviously could not be allowed to drive it, the officer decided that the truck had to be towed away. In the process of carrying out departmental pull-in procedures, the officer observed a briefcase partially opened on the floorboard with a weapon butt sticking out. Upon further inspection of the briefcase, he found a fully loaded .22 automatic revolver, numerous plastic bottles containing what he suspected to be narcotics, $2,000.00 in cash and assorted drug paraphernalia. In plain view under the passenger seat, there was a fully loaded .38 caliber steel revolver. In addition, one of the toolboxes in the cab of the truck contained a fully loaded nickelplated .38 caliber revolver. On discovery of the suspected narcotics in the briefcase, narcotics officers were summoned. At the scene of the arrest and inventory, the narcotics officers were given the brief case, drugs and cash and they confiscated the 1969 Chevrolet truck pursuant to T.C.A. § 52–1443(b)(4).

The truck bed was covered by a tarpaulin under which the officers stated they "found a somewhat large storage trunk, which was chained and padlocked to the corner of the bed of the truck." Cabage was taken to jail, and his truck was taken to the city garage.

The narcotics officer testified that at the garage "the lock was cut off of the trunk." Inside the trunk they found approximately

six pounds of marijuana, some scales and several plastic bags.

Cabage was indicted on six counts of possession with the intent to sell and deliver the following controlled substances: pentobarbital, methaqualone, amobarbital, secobarbital, diazepam, and in excess of one-half ounce of marijuana. In addition, he was indicted for public drunkenness, carrying a dangerous weapon with the intent to go armed and possession of tetrahydrocannabinols, not in excess of one-half ounce.

After a trial on the merits, the jury found the Defendant guilty on five counts of simple possession of Schedule II controlled substances (all of which were found in the cab of the truck), sentencing him to not less than one nor more than three years in the Knox County Penal Farm on each count. In addition, the jury found him guilty of possession of marijuana (which was found in the trunk), sentencing him to not less than four nor more than eight years in the State Penitentiary and a fine of $3,000.00; and carrying a dangerous weapon with the intent to go armed, sentencing him to eleven months and twenty-nine days in the Knox County Penal Farm and a fine of $50.00. The trial judge ordered the above sentences to be served consecutively, and he released the fines since Defendant was indigent. Cabage was also found guilty of public drunkenness and sentenced to 60 days in the County Penal Farm, and simple possession of tetrahydrocannabinols with a sentence of eleven months and twenty-nine days. These two sentences were ordered to be served concurrently with the first count.

On appeal to the Court of Criminal Appeals, Cabage averred that the trial court erred by refusing to suppress evidence obtained by a warrantless search. The Court of Criminal Appeals reversed Cabage's conviction for possession of marijuana with intent to sell or deliver, affirming the other convictions. In so holding, the Court found the search of the cab of the truck reasonable and that of the locked trunk, where the marijuana was found, unreasonable.

This case is quite similar to that of *State v. Howard,* 645 S.W.2d 751 (Tenn.1982), for in this case Cabage's truck was partially blocking the access to the car wash and he was alone and in his intoxicated condition, could not be allowed to drive. Howard was also arrested for public drunkenness and he too had no one with him who could drive or take possession of his vehicle. In *Howard,* "[t]he officers were of the opinion that due to his drunkenness, the appellee (Howard) did not have the capacity to sign a form releasing the officers from liability for loss or damage to the automobile and contents if they left it on the bank's premises." We found that "[t]he procedures of the Memphis Police Department called for the towing of the automobile under such circumstances and in our opinion the officers were justified in following the procedures." *See also, State v. Roberge,* 642 S.W.2d 716, 719 (Tenn.1982), where Roberge was too intoxicated to be entrusted with the automobile and he likewise had no one who could drive it for him. We held there were no reasonable alternatives other than to have the automobile towed.

■ The record supports the finding of the Court of Criminal Appeals that there were no reasonable alternatives other than to have the truck towed away because there were no individuals with whom Cabage could make custodial arrangements and the truck could not be left at the car wash. We agree with the Court's conclusion that the inventory "procedure was not only proper but necessary."

The State argued in the court below that the drugs and weapons found in the cab were admissible both as evidence obtained in a search incident to a lawful arrest and also as evidence obtained in a routine inventory search of a lawfully impounded automobile. The Court of Criminal Appeals pretermitted the question of the inventory search, holding that "[t]he articles found in the search of the truck cab were properly admitted under the rules outlined in *Belton.*" In *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court held that

when an officer has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile and may examine the contents of any containers found in the passenger compartment. We agree that the evidence obtained from the cab of the truck was evidence obtained in a search incident to a lawful arrest. We also find, under the rationale of *Roberge* and *Howard,* that the evidence was also admissible as having been found in a routine inventory search of a lawfully impounded vehicle.

■ The truck was properly seized pursuant to T.C.A. § 52–1443 because after conducting the routine inventory search of the cab of the truck and discovering narcotics in an opened briefcase, the officers had the necessary probable cause to seize the truck under T.C.A. § 52–1443(b)(4). See, *State v. Glenn,* 649 S.W.2d 584 (Tenn.1983).

We must now determine whether the Court of Criminal Appeals was correct in holding that, "the warrantless inventory of the contents of the footlocker was unreasonable, and the marijuana, scales and plastic 'baggies' found in the footlocker should have been suppressed." In *Roberge, Howard* and *Glenn, supra,* we held that it was proper when inventorying a lawfully impounded vehicle to open closed, unlocked containers. We are asked in this case to determine the limits to which the inventory may be extended. Here, the container was not only closed, but "chain-locked with a padlock.

In *State v. Glenn, supra,* we pointed out that there has been no consensus among the jurisdictions on whether inventorying the contents of closed containers was reasonable or unreasonable. We discussed in *Glenn* the two views representing the split of authority among the jurisdictions. We found in *Roberge, Howard* and *Glenn* that the better view was to allow officers to open unlocked containers, when necessary to make a realistic and meaningful inventory.

■ In addressing the extent and scope of an inventory search we need to look at the purposes of an inventory search, described in *Roberge, Howard* and *Glenn* as: (1) to protect the property of the owner, and (2) to protect officers from claims of negligence or violation of civil rights in the event property disappears or is damaged.

■ In this case the officer stated that "you could not gain entry to the trunk without cutting the lock and the chain." The lock was cut off with a pair of bolt cutters. We have found no case which has gone so far as to allow an officer to cut or otherwise damage a locked container in order to conduct an itemized inventory of its contents. The purpose of an inventory is to protect the property of the owner and to protect officers from claims by the owner that the property was damaged; therefore, an officer cannot be justified in breaking into and damaging property in order to conduct an inventory search. To hold otherwise would violate the intended purposes of a proper inventory.

■ It is also obvious that when a container is chained and locked there is a greater expectation of privacy than when an item is left in plain view or is in a closed, but unlocked container. In this case it was not unreasonable to demand that the officers obtain a search warrant before breaking into Defendant's footlocker.

The judgment of the Court of Criminal Appeals is affirmed. The conviction for possession of marijuana with intent to sell or deliver is reversed and remanded for a new trial, all other convictions are affirmed.

FONES, C.J., and COOPER, BROCK and HARBISON, JJ., concur.