IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs February 25, 2003

## STATE OF TENNESSEE v. RONALD C. FLOYD

**Direct Appeal from the Criminal Court for Cumberland County**
**No. 6113     Leon C. Burns, Jr., Judge**

**No. E2001-03044-CCA-R3-CD**
**August 12, 2003**

The Defendant, Ronald C. Floyd, pled guilty to possession of Diazepam, a Schedule IV controlled substance, with the intent to sell or deliver, a Class D felony. Pursuant to Tennessee Rule of Criminal Procedure 37, the Defendant reserved as a certified question of law the issue of whether the trial court erred by denying his motion to suppress. In this appeal, the issues presented are: (1) whether the failure to provide the Defendant with a copy of the search warrant at or before the initiation of the search invalidated the search, and (2) whether the description of the property to be seized as stated in the warrant was so general as to render the warrant invalid. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

C. Douglas Fields, Crossville, Tennessee, for the appellant, Ronald C. Floyd.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; William E. Gibson, District Attorney General; and Gary McKenzie, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I. FACTUAL BACKGROUND

On September 24, 2000, Officer Becky Seiber approached a 1994 Mitsubishi Eclipse driven by the Defendant, Ronald C. Floyd, near Mr. Edd's saloon in Crossville, Tennessee. Officer Seiber then stopped the vehicle because she noticed it was blocking traffic on the street in front of the bar. When the Defendant parked the vehicle on the south side of the saloon's parking lot, Officer Seiber noticed that the car was also missing a license plate. When she approached the vehicle, the officer

then noticed a marijuana cigarette butt inside the cab of the car and began to question the Defendant. The Defendant identified himself to Officer Seiber but stated that he did not have a driver's license.

Noting that the Defendant appeared to be nervous, the officer asked him to exit the vehicle. The Defendant stated that he was nervous because of the marijuana in his car and stepped out of the car. Officer Seiber noticed that while he was stepping out of the car, the Defendant placed a small plastic bag containing a white substance in his mouth and swallowed it. Because of this, she handcuffed the Defendant, placed him under arrest and put him in her patrol car.

During the subsequent search of the Defendant's vehicle, Officer Seiber discovered a small amount of marijuana, drug paraphernalia, and a locked safe, which the Defendant stated that he wanted back. Officer Seiber arranged to have the vehicle towed to an impound garage, and the case was then turned over to Detective Larry Hamilton.

Detective Hamilton sought a search warrant for the safe based on the Defendant's actions on the night of the arrest and also based on the fact that an investigation of the safe by a police dog indicated that illegal contents were inside. A search warrant was issued, indicating that there was probable cause to believe that "drugs and drug proceeds" were inside the locked box. An affidavit attached to the warrant also indicated that Detective Hamilton had reason to believe the search was necessary because of the marijuana and drug paraphernalia found inside the car by Officer Seiber, because of the Defendant's actions in swallowing the plastic bag prior to his arrest and because the Defendant had been convicted of drug sales five times in the past nine years. After receiving the search warrant, Detective Hamilton discovered seventy-one tablets of Diazepam, commonly known as Valium, inside the safe.

Detective Hamilton testified that at the time he went to court to obtain the search warrant, the Defendant was still in jail, but he stated that the Defendant had been released from jail by the time the search warrant was issued. He stated on cross-examination that he did not recall if the Defendant was still in jail at the moment the judge issued the warrant. However, he also testified that the police "couldn't get [the Defendant] to come into the office" after they had obtained the warrant. Detective Hamilton stated that he did not recall the exact date that the Defendant was served with the warrant, but he maintained that the police were able to serve the Appellant with a copy of the warrant several days after the search was conducted.

During the pre-trial proceedings, the trial court found that the failure to serve the Defendant with a copy of the search warrant prior to its execution did not render the search an illegal one, as the Defendant was served with a copy within a few days of the search. It also found that the warrant was not invalid for vagueness because the affidavit of Detective Hamilton and the search warrant, which were both served on the defendant at the same time, sufficiently indicated, when considered together, that the items to be searched for were illegal drugs.

In this appeal, the issues presented are: (1) whether the failure to provide the Defendant with a copy of the search warrant at or before the initiation of the search invalidated the search, and (2)

whether the description of the property to be seized as stated in the warrant was so general as to render the warrant invalid. We conclude that the execution of the search warrant was valid and that the warrant adequately described the items believed to be in the Defendant's possession. We therefore affirm the judgment of the trial court.

## II. ANALYSIS

### A. Service of the Search Warrant

The Defendant contends that the failure of the police to serve him with a copy of the search warrant prior to conducting the search of the safe invalidates the search and renders illegal the seizure of the Diazepam. Entering into a locked container or device found inside a vehicle during a search of that vehicle requires a search warrant. See State v. Cabbage, 649 S.W.2d 589, 592 (Tenn. 1983). Rule 41 of the Tennessee Rules of Criminal Procedure governs the legality of searches and seizures and is intended to "'secure the citizen against carelessness and abuse in the issuance and execution of search warrants.'" State v. Steele, 894 S.W.2d 318, 319 (Tenn. Crim. App. 1994) (quoting Talley v. State, 345 S.W.2d 867, 869 (Tenn. 1961)); see generally Tenn. R. Crim. P. 41. Rule 41(c) of the Tennessee Rules of Criminal Procedure states, in pertinent part, that

> the failure of the serving officer where possible to leave a copy with the person or persons on whom the search warrant is being served . . . shall make any search conducted under said search warrant an illegal search and any seizure thereunder an illegal seizure.

Tenn. R. Crim. Pro. 41(c) (emphasis added).

The Defendant alleges, pursuant to Rule 41(c) of the Tennessee Rules of Criminal Procedure, that the search warrant in this case should have been invalidated because the Defendant was not served with a copy of the warrant prior to the warrant's execution, because the police made no reasonable efforts to serve the Defendant prior to executing the warrant, and because no exigent circumstances existed requiring immediate execution of the warrant. However, this is not the standard imposed by law. Rule 41(c) requires service prior to the execution of a search warrant only "where possible." Id. The Tennessee Supreme Court has noted that where it is undisputed that no one is present on whom an officer could serve a copy of a search warrant at the time it is to be executed, it is not possible for the officer to leave a copy with the person being served. See State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002). Furthermore, even if the Defendant was still in jail at the time the warrant was authorized by the magistrate judge, and hence easy to locate by the officer conducting the search, the police were still not required to personally deliver him a copy prior to conducting the search. See id.

The proposition that the police are not always required to leave a copy of the search warrant with a defendant prior to executing the warrant is further supported by other sections within Rule 41. Subsection (d) of Rule 41 allows an officer to "leave the copy and receipt [for the property taken] at a place from which the property was taken" as an alternative to giving a copy and receipt to "the person from whom or from whose premises the property was taken" while the search is being

executed. Id. In the case at bar, the police personally delivered a copy of the search warrant and a receipt for the property found in the safe to the Defendant within a few days of the execution of the warrant. In our view, the officers complied with the requirements of Rule 41. Therefore, we conclude that the execution of the search warrant was valid. This issue is without merit.

## B. Description of the Property to be Seized

The Defendant next contends that the search warrant in this case was too general because the warrant authorized a search for "drugs and drug proceeds." The Fourth Amendment to the United States Constitution requires a search warrant to contain a particular description of the items to be seized. See State v. Henning, 975 S.W.2d 290, 296 (Tenn. 1998); see also U.S. Const. amend. IV. Furthermore, Article I, § 7 of the Tennessee Constitution prohibits general warrants, and Tennessee Code Annotated § 40-6-103 requires search warrants to describe particularly the place and property to be searched. State v. Bostic, 898 S.W.2d 242, 245 (Tenn. Crim. App. 1994); see also Tenn. Const. art. I, § 7; Tenn. Code Ann. § 40-6-103. To satisfy the particular description requirement, a warrant "'must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized.'" State v. Meeks, 867 S.W.2d 361, 372 (Tenn. Crim. App. 1993) (quoting United States v. Cook, 657 F.2d 730, 733 (5th Cir. 1981)); see also Henning, 975 S.W.2d at 296. "Where the purpose of the warrant is to find specific property, the property should be so particularly described as to preclude the possibility of seizing any other property. . . . [I]f the purpose of the warrant [is] to seize . . . any property of a specified character which, by reason of its character, and of the place where and the circumstances under which it may be found, if found at all, would be illicit, a description, save as to such character, place and circumstances, would be unnecessary, and ordinarily impossible." Lea v. State, 181 S.W.2d 351, 352-53 (Tenn. 1944); see also Henning, 975 S.W.2d at 296.

The Defendant cites State v. Johnson to support his contention that the search warrant in this case is invalid as describing the property too generally. 854 S.W.2d 897 (Tenn. Crim. App. 1993). In Johnson, this Court indicated that a search warrant using the phrase "stolen property and drugs" would fail for lack of particularity. See id. at 900. The facts of this case, however, can be distinguished from Johnson because of the mention of illicit drugs in other parts of the warrant at issue. In Johnson, we recognized that search warrants specifying "drugs" may be upheld where other portions of the warrant refer to the drugs as illegal. See id. As we stated in Johnson, "'[m]arijuana' or 'any illegal drugs' would be sufficient to satisfy the constitutional and statutory requirements," while the mere use of the word "drugs" would be inadequate. Id.; see also State v. Smith, 867 S.W.2d 343, 349-50 (Tenn. Crim. App. 1993).

Here, the affidavit of Detective Hamilton suggests in four separate instances that the phrase "drugs and drug proceeds" clearly refers to illegal drugs. First, the affidavit mentions the conduct of the Defendant during his arrest, at which time he swallowed "a small bag containing a white powder substance." Then, the affidavit mentions the "marijuana and paraphernalia" found in the same car in which the safe was located. Next, Detective Hamilton noted that a "drug dog" had a

"positive reaction" to the safe.  Finally, the affidavit noted that the Defendant had been convicted of drug sales five times since 1991.

Taken in its totality, the warrant here clearly indicates that the phrase "drugs and drug proceeds" was intended to encompass illegal drugs and the proceeds from their sale.  Because the four references to illicit substances in the affidavit clarify the general reference to drugs and drug proceeds later in the warrant, the trial court properly concluded that the warrant adequately described the illegal items believed to be in the safe.

## III.  CONCLUSION

We conclude that the trial court properly found that the execution of the search warrant was valid and that the subsequent seizure of evidence was also valid as a matter of law.  We further conclude that the trial court was correct in finding the description of the property to be seized in the search warrant adequately described the illegal items which were believed to be in the Defendant's possession.

Accordingly, the judgment is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE