FILED
05/26/2026
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 18, 2026 Session

## STATE OF TENNESSEE v. MERV CONLEY RODGERS

**Appeal from the Criminal Court for Knox County**
**No. 125686          Hector I. Sanchez, Judge**

---

### No. E2025-00195-CCA-R3-CD

---

A Knox County jury convicted the Defendant, Merv Conley Rodgers, of aggravated assault by strangulation, aggravated assault with a deadly weapon, domestic assault, and especially aggravated kidnapping. The trial court imposed a total effective sentence of forty years in the Tennessee Department of Correction. On appeal, the Defendant argues: (1) that the trial court erred when it concluded he lacked standing to challenge the search of his vehicle; (2) that the trial court erred when it prevented the Defendant from introducing evidence from a prior domestic dispute; (3) that the evidence was insufficient to support his conviction for aggravated assault and especially aggravated kidnapping; and (4) that the trial court erred when it sentenced him. After a thorough review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the court, in which J. ROSS DYER and JILL BARTEE AYERS, JJ., joined.

J. Christian Stadler, III (at trial) and Wesley D. Stone (on appeal), Knoxville, Tennessee, for the appellant, Merv Conley Rodgers.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Charme P. Allen, District Attorney General; and Sean A. Roberts, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from an incident between the Defendant and the female victim. At the time of the incident, the Defendant was living in a van, and it was parked behind a thrift store in a public parking lot. The Defendant and the victim were acquaintances who had

sexual relations. On June 21, 2023, the Defendant and the victim were sitting in his van when he hit her with his fist, and, when the victim tried to exit the van, he grabbed her by the hair and refused to allow her to leave. He then hit her with a baseball bat, poked her with a knife, and threatened to "cut her up into pieces." The Defendant then strangled the victim until she lost consciousness. When the victim regained consciousness, she was bound at her wrists. The Defendant removed the restraints but refused to let her leave the van. He choked the victim until she lost consciousness a second time. She attempted to leave the van multiple times and was able to do so when the Defendant left for work. As she fled the van, the Defendant followed her into the parking lot and attempted to run her over with the van. The victim fled to a nearby apartment complex and called 911. For these events, a Knox County grand jury indicted the Defendant for: two counts of aggravated assault with a deadly weapon; two counts of domestic assault; and one count of especially aggravated kidnapping.

## A. Suppression Hearing

The Defendant filed a motion to suppress the evidence, mainly contraband, that resulted from a warrantless search of the van in which the Defendant lived. The State replied that the Defendant lacked standing to challenge the search of the vehicle. The Defendant testified that he had been arrested on June 22, 2023, while driving a white Dodge van. The Defendant stated that he gave law enforcement consent to search the Dodge van. Law enforcement inquired about a second van and asked to search it as well; the Defendant stated he did not give consent for a search of the second van, which was located at a "job site" on Holston Drive. The Defendant stated that the second van had been parked and inoperable for two years, and he stated that he lived in the second van.

On cross-examination, the Defendant agreed that law enforcement recovered a baseball bat from inside the second van. The Defendant was not present when the van was searched but "assumed" that the door to the van was open when law enforcement found it. The Defendant agreed that the van was parked in a public parking lot behind a thrift store and that it was registered to another individual, Billy Lee Ray.

Sean Lyons, an officer with the Knoxville Police Department ("KPD"), testified that he located the van parked behind the thrift store. He recalled that consent was not given for the search, and he was made aware that the Defendant lived in the van. The van, however, was not registered to the Defendant. Officer Lyons said he "had to stick [his] head" in where the door was open to see a bat under the bed. He did not make entry into the van until he saw the bat and went in to get it.

The State argued that, based on the variables, the Defendant did not have a reasonable expectation of privacy in the van parked behind the thrift store. The trial court made the following statement when it denied the Defendant's motion to suppress:

2

So the Court has listened to proof and heard argument with respect to standing of a van that was searched. It was located, obviously, on a different area from where the [D]efendant was located. Based on that, officers speaking with the victim they did respond to the van which I'm assuming is where the assault occurred. I didn't hear any proof as to the acts. We're just dealing with the standing issue first. So really the Court is guided to *State v. Cochran* as well as *State v. Ross*, and those set out a two-prong analysis to determine whether or not somebody does have standing, and as stated by the State.

First thing as to whether the [D]efendant had a subjective expectation of privacy. I think given the circumstances he may have had a subjective expectation of privacy. The second prong, however, is whether society would recognize his subjective expectation as reasonable. And I think given the circumstances that the van was parked on a public parking lot and behind a thrift store, it was left in a state of abandonment essentially during the daylight hours with the doors wide open.

It is apparent that someone is attempting to live in that van, but what the Court's missing here is some degree of proof to establish that he wasn't squatting, that he did have a subjective expectation of privacy, a reasonable one that society would recognize as such.

And I do find that the defense has failed to make that finding as with regard to the second prong of the two-prong analysis under the aforementioned cases. So I think that given that, the motion to suppress is respectfully denied.

## B. Trial

At the Defendant's trial, the parties presented the following evidence: Michael Mays, a Knox County 911 dispatcher, identified a certified copy of the recording of the victim's 911 call, which the State then played for the jury.

Eric Blood, a KPD officer, responded to a reported incident of a female being chased by a male driving a white van. Arriving at an apartment complex, Officer Blood encountered the white van, which was being driven by the Defendant. The Defendant stated he was not doing anything. Officer Blood then located the victim inside of an apartment; she was acting scared, nervous and had visible signs of injury to her face. Based on her statements, Officer Blood determined that a domestic incident had occurred and arrested the Defendant.

3

Officer Blood recalled that the victim's left eye was markedly swollen with what appeared to be a fresh injury. The entire side of the victim's face was swollen, and she appeared to be in pain. The victim also had bruises on her arm, and marks and bruises on her neck consistent with strangulation. The victim reported that the assault had occurred behind the thrift shop, prompting law enforcement to respond there to collect evidence. Pictures of the victim's injuries were shown to the jury.

Officer Lyons testified that he responded to the incident report and encountered the victim; he testified consistently with Officer Blood about his interaction with her. Officer Lyons proceeded to the thrift store parking lot where he observed a van. Officer Lyons observed drug paraphernalia inside the van as well as the end of a baseball bat, which the victim had indicated was used by the Defendant to assault her.

The victim testified that on the evening of June 21, 2023, she was sitting in the Defendant's van with him when he suddenly hit her in the face with his fist. The victim grabbed her purse and attempted to flee, but the Defendant grabbed her by the hair to keep her inside the van. The Defendant slammed the door to the van and told her that he would not let her leave. The Defendant then started "choking [her] out" before making her sit on the floor of the van. The Defendant hit her with a baseball bat and started poking her in her shoulder with a knife before he threatened to kill her and "cut her up into pieces."

The victim stated that, while the Defendant was choking her, she lost consciousness three separate times. When she awoke, the Defendant tied her wrists with a string on the front side of her body. The Defendant continued to swing the baseball bat at her and hit her with the bat once in the arm and once in the back. This situation continued throughout the night, and every time she tried to leave the van he would wake up and grab her. The following morning the Defendant left the van to go to work at the thrift store directly adjacent to the parking lot where the van was parked.

After the Defendant left the van for work, the victim waited inside because she suspected he would come back to look for her. She described herself as being in shock from the events of the night before. After he checked on her and then went back inside the thrift store, the victim "took off running." The Defendant pursued her and then got into the white Dodge van and tried to run her over. The victim ran to an apartment building where a friend lived because she knew it was a safe place to go. The victim hid behind the apartment building until she gained entry into an apartment.

On cross-examination, the victim stated she had met the Defendant through a friend and had known him for about two weeks. They spoke on the phone several times before the victim visited the Defendant at his van on June 20. She spent the night with him there on the 20th. The evening of the 21st, another woman joined them, and they socialized in the van until the woman left. The victim then tried to leave, and the Defendant prevented her from doing so saying, "You're never going to leave." The Defendant dragged her by

4

her arms to the back of the van where he choked her. The assaults continued all night until the Defendant left the van for work.

Counsel for the Defendant posed a question regarding the victim's history with criminal charges for "domestic issues," and the State sought a jury-out hearing. Outside the presence of the jury, defense counsel sought to question the victim about her prior relationship with another individual that allegedly involved domestic disputes and resulted in charges being filed against the victim in March of 2023. Pictures of the victim's injuries were taken after the incidents, and counsel argued that some of the victim's bruising could have remained from the prior incidents. The State argued that this evidence could be used to impeach the credibility of the victim's statements that the Defendant had inflicted the bruises and would be prohibited by Tennessee Rule of Evidence 608(b). The State also argued that the evidence was inadmissible pursuant to Tennessee Rule of Evidence 404(b).

At the conclusion of the jury-out hearing, the trial court made the following statement:

> I think, under [Rule] 608, I do agree with the State. So the introduction of the certified prior Judgment, as used -- extrinsic evidence, essentially, would not generally be admissible. So we are traveling under the Channon Christian Act, which does, very much, track Rule 404(b), it just extends it to witnesses, as well, and victims. So the Court did afford the defense to have a hearing outside of the jury's presence. The Court must determine that a material issue exists, other than conduct conforming with a character trait, and must, upon request, state the record -- state on the record the material issue and the ruling and the reason for admitting the evidence.

> What's most important here is, the Court must find the proof of the other crime, wrong or act to be clear and convincing. The Court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

> So I do appreciate that [defense counsel] has made argument; however, I've not been able to find proof of those other acts or wrongs or anything that he suggests would apply in this case to be clear and convincing. So I'm going to go ahead and exclude it on that ground, as well as the fact that I do think that the prejudice to the victim in this case is substantially outweighed by the probative value of suggesting that, perhaps, a bruise is months old, that was inflicted upon somebody else, and could still potentially be on her person.

> So, obviously, it's ground for argument. I think you can make argument with regard to the bruising, but for those reasons, the motion to

5

introduce a certified prior Judgment under 608 and the Channon Christian Act is respectfully denied at this time.

The Defendant testified that he met the victim two weeks before the incident and that she came to stay in his van on the night of June 20. They had intercourse and the victim spent the night in the van. The following day, the victim and the Defendant were together and had a disagreement. When they arrived back at the Defendant's van, the victim was "bickering" with him, and the Defendant admitted he lost his temper and struck the victim. He immediately apologized and asked her to leave, but she refused. Instead, the two resolved their conflict and spent the night together until the Defendant left for work the next day. The Defendant returned to the van soon after going to work to bring food to the victim, and the victim showed him her injured eye. She then left to go to the nearby apartment complex, and the Defendant followed her in his van. The Defendant was shocked when the police arrived at the apartment building. He denied committing the assaults the victim had alleged.

At the conclusion of trial, based on this evidence, the jury convicted the Defendant of one count of aggravated assault by strangulation, one count of aggravated assault with a deadly weapon, one count of domestic assault, and one count of especially aggravated kidnapping; the jury acquitted the Defendant of the remaining counts.

## C. Sentencing

At the Defendant's sentencing hearing, the State introduced certified copies of the Defendant's prior convictions for aggravated assault, burglary, robbery, and felony larceny and the pre-sentence report. Following the parties' arguments, the trial court made the following statement:

> So the Court has found that with respect to Counts 1 and 2 [the Defendant] is a Range III persistent offender.

> In Count 6 he is a Range II multiple offender. Counts 4 and 5 are misdemeanor offenses that by operation of law will merge anyhow. But so the Court does consider in this sentencing mitigation and enhancement factors pursuant to [T.C.A. §] 40-35-113 and 40-35-114.

> So the State did file a sentencing memorandum and directs the Court to certain enhancement factors that they filed. So the first is enhancement factor (1), and that is states in part, "The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range."

6

So with respect to the appropriate range in Counts 1 and 2, he does have felony convictions beyond what is necessary to establish that he is a Range III persistent offender, and with respect to Count 6 he does have convictions beyond what is necessary to establish that he is a Range II multiple offender in Count 6.

He also, according to the PSI, does have a history of criminal behavior that the Court can consider and the State did put on proof and the Court ultimately made a finding beyond a reasonable doubt that he has eight prior felony convictions; four of which are C, three are Class D felonies, and one's a Class E felony.

Two of the Class D for range purposes are counted as one, but still the Court does make – does give that some weight and consideration. So with respect to enhancement factor (1), the Court does find that does apply and will give it a great deal of weight essentially in this particular case. The ninth factor, I appreciate the argument from the State that the [D]efendant possessed or employed a firearm, explosive device or another deadly weapon during the commission of the offense. The way I read that is "or other deadly weapon." So "or other," not in addition to. So I'm not going to give that enhancement factor much weight at all with regard to the appropriate range in his sentence.

So the Court then considers evidence from the sentencing hearing. I did receive the certified prior judgments as well as argument and the PSI. So the Court did consider the presentence report as well.

Principles of sentencing and arguments as to alternatives, unfortunately based on his conviction for a Class A felony, there really are no alternatives based on what that sentence requires, confinement at a hundred percent.

So the nature and the characteristics of the criminal conduct, the Court recalls correctly, this was an episode that lasted over 24 hours or so, in which the victim was confined and strangled in a van and at some point was able to escape. And then what was most troubling is that [the Defendant] then pursued her, and she was hiding.

She had removed herself from where she had been kidnapped and assaulted, and he was hot on her tail, essentially, to catch her and find her. Luckily she was able to make contact with law enforcement who did interrupt his effort to continue the assault, or continue to hold her against her will.

7

With respect to mitigation and enhancement factors, I've discussed that. Statistical information as to practices, the Court certainly considers the guidance from the Administrative Office of the Courts and considers prison overcrowding and things of that nature. Again in this particular case, there's not an alternative. It's going to be a prison sentence.

Everyone knows that on the front end. So the statement of the [D]efendant, the Court gave an opportunity for [the Defendant] to address the Court. He did say that he was sorry. I do think it is genuine. He did say that in his presentence report as well.

So under 40-35-102, that deals with the purpose and intent and first and foremost is to promote justice. That is exactly what the Court intends to do in this particular case with no greater sentence than deserved for the crime to avoid inequalities unrelated to the purposes of the sentencing chapter and the least severe measure necessary to achieve the purposes.

So with respect to confinement under 40-35-103, the Court considers five factors there. First, "Is confinement necessary to protect society by restraining the defendant with a long criminal history?" Well, first of all, statutorily confinement is mandated and also the Court does give that first factor a great deal of weight because [the Defendant] unfortunately has a very lengthy criminal history. To his defense, he did for periods of time appear to behave himself. Either that or he was confined, but I haven't heard any proof on that to give that much weight, but does find that he has a long criminal history.

Second factor there is whether or not confinement is necessary to avoid depreciating the seriousness of the offense. The Court does find that this is an extremely serious offense that would have continued to, I believe, get worse was he able to find the victim sooner and take her back into his custody and bring her back to that van. So the Court does find that this is a seriousness -- serious offense and confinement is necessary to avoid depreciating just how serious this offense was.

Third factor is whether or not confinement is particularly suited as an effective deterrent to others for similar crimes. I don't know if -- I don't think this case garnered any media attention, but I know that the attorney general's office here does release press releases and perhaps in the press release, based on the offense, someone else who does consider committing these types of offenses could consider a lengthy sentence in which [the Defendant] will get just based on his criminal history and ultimately decide not to engage in that conduct, so.

8

Fourth factor is "Are there measures less restrictive frequently or recently tried unsuccessfully." There are certainly measures less restrictive, but again, not with respect to Count 6. So the Court will give that limited weight just based on the statutory requirements of Count 6.

So finally the fifth factor, "The potential or lack of potential for rehabilitation or treatment as to length or manner of service." I do think that [the Defendant] is amenable to rehabilitation, and hopefully self-correction. I hope he'll take advantage of those services in the penitentiary and avail himself of those services as well.

So the Court also needs to make a finding with regard to sentencing. The State does ask the Court to apply consecutive sentencing in this particular case.

So this is not a case that involves mandatory consecutive sentencing under Tennessee Rules of Criminal Procedure Rule 32, subsection (c) (3), but this is a permissive consecutive sentencing consideration under 40-35-115, subsection (b). I think several apply here.

The first is (2) under that statute, "Defendant is an offender whose record of criminal activity is extensive." So based on the PSI and the eight prior felony convictions that were introduced in this hearing, the Court does find that [the Defendant] is an offender whose record of criminal activity is very extensive. Also under (4), "The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." So in looking at the injuries to the victim with regard to the strangulation in the State's case-in-chief as well as how swelled her face was and the fact that he continued to pursue her, the Court must make further findings under *State v. Wilkerson* that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the aggregate sentence must reasonably relate to the severity of the offenses committed.

So the Court does find by a preponderance of the evidence that both of the *Wilkerson* factors are present here. And this case does call for an extended sentence in order to protect the public and the victim in this case against further criminal conduct by the defendant. And the sentence in this case will reasonably relate to the severity of the offenses committed.

The Court already articulated that this is a serious case, so, I do think that consecutive sentencing is warranted in this particular case. So we'll treat

9

Count 6 as the lead count. With respect to Count 6, [the Defendant], a jury of your peers found you guilty of especially aggravated kidnapping, a Class A felony.

The Court has determined beyond a reasonable doubt that you are a Range II multiple offender. The Court is going to fix your sentence in Counts 6 at 30 years to serve in the Tennessee Department of Corrections [sic] at a 100 percent service rate. So you will not be eligible for any sort of time off of that sentence under the statute.

With regard to Count 1, the aggravated assault, the Class C felony, the Court is -- has determined beyond a reasonable doubt you are a Range III persistent offender. The Court's going to fix your sentence at 10 years. You're going to serve that at a 100 percent service rate minus the potential of a 15 percent reduction. So you could get it down to 85 percent. That sentence is going to run consecutive to the 30-year sentence imposed in Count 6. Count 2, the Court is going to fix your sentence, that's an aggravated assault conviction again, at 10 years, Range III persistent offender. That's going to run concurrent with the sentence imposed in Count 1. Count 3 you were found not guilty.

In Counts 4 and 5, those are Class A misdemeanors. The Court is going to fix your sentence at 11 months and 29 days on each of those. They're going to run concurrent with each other as well as concurrent with Count 1, and with respect to the fines in this particular case, the jury did make a finding with regard to Count 5. They did assess a fine at $3,500. So you'll be ordered to pay that fine as well. So that will be the order of the Court at this time. Your aggregate sentence is 40 years. The first 30 at a hundred percent. The remaining 10 will be at a hundred percent minus potential of 13 percent reduction.

It is from these judgments that the Defendant appeals.

## II. Analysis

On appeal, the Defendant argues: (1) that the trial court erred when it concluded he lacked standing to challenge the search of the van parked behind the thrift store; (2) that the trial court erred when it prevented the Defendant from introducing evidence that the victim had been involved in a prior domestic assault, with someone other than the Defendant; (3) that the evidence was insufficient to support his conviction for aggravated assault and especially aggravated kidnapping; and (4) that the trial court erred when it sentenced him. The State responds that: (1) pursuant to plain error review, the Defendant did not have standing to challenge the search of the van which he did not own; (2) the

Defendant waived hir argument related to the victim's prior domestic incidents, and furthermore failed to show they were relevant; (3) the evidence was sufficient to support the Defendant's convictions; and (4) the Defendant waived his challenge to his sentence and is not entitled to plain error review.

## A. Standing to Challenge Search of Van

The Defendant contends that law enforcement's warrantless search of the van, permanently parked behind the thrift store, violated his Fourth Amendment right to be free from unreasonable searches. The trial court held that the Defendant lacked standing to challenge the search. The State points out that the Defendant failed to raise in his motion for new trial the issue of his standing to challenge law enforcement's search of the van parked behind the thrift store. The State thus contends that we are to review this issue for plain error and that the Defendant has not established that a clear and unequivocal rule of law has been breached. We agree with the State.

Full appellate review of this issue is waived because the Defendant failed to raise the issue in his motion for new trial. *See* Tenn. R. App. P. 3(e) (treating issues "upon which a new trial is sought" as waived "unless the same was specifically stated in a motion for a new trial"); *see also State v. Harbison*, 539 S.W.3d 149, 164 (Tenn. 2018) (citations omitted). Therefore, we review this issue solely to determine if plain error review is warranted.

The doctrine of plain error applies when all five of the following factors have been established:

> (a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached;
> (c) a substantial right of the accused must have been adversely affected;
> (d) the accused must not have waived the issue for tactical reasons; and
> (e) consideration of the error must be "necessary to do substantial justice."

*State v. Page*, 184 S.W.3d 223, 230-31 (Tenn. 2006) (quoting *State v. Terry*, 118 S.W.3d 355, 360 (Tenn. 2003)) (internal brackets omitted). "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *Id.* at 231.

This court, citing *Rakas v. Illinois*, 439 U.S. 128 (1978), for the conclusion that "Fourth Amendment rights are personal rights which, . . . may not be asserted vicariously," has held that a defendant, who "made no claim of ownership or other interest in the automobile searched," "made no assertion that he owned or had any possessory rights to the items seized," and "made no showing that he had any legitimate expectation of privacy in the areas searched," lacked standing to contest the search of an automobile. *Schultz v.*

11

*State*, 584 S.W.2d 223, 225-26 (Tenn. Crim. App. Jan. 25, 1979). In this case, the evidence was that, although the Defendant lived in the van, the van was registered to someone else, and the vehicle registration indicated the same. The doors to the van were wide open and it was parked in a public lot. Thus, the trial court ruled that the Defendant did not have an expectation of privacy in the vehicle and, therefore, lacked standing to challenge the search of the van and the seizure of the items found inside. *State v. Roberge*, 642 S.W.2d 716, 718 (Tenn. 1982). We agree with the trial court. Accordingly, the Defendant has not established, as required by plain error review, that a clear and unequivocal rule of law was breached by the trial court's denial of his motion to suppress. Therefore, we conclude that plain error relief is not warranted. The Defendant is not entitled to relief on this issue.

## B. Admission of Evidence

The Defendant next contends that he was denied the opportunity to present a complete defense when the trial court, after a jury-out hearing, denied his request to question the victim about her past domestic incidents with another individual and her resulting injuries. He contends that a prior relationship involving domestic abuse of the victim presented the possibility of an alternative source of her injuries. The State responds that the Defendant did not raise this claim of a constitutional violation of his Sixth Amendment right at trial or in his motion for new trial, has waived appellate review, and thus, this court should not address it. The State also contends that the Defendant is not entitled to plain error review of this issue. After *de novo* review of the trial court's ruling, we conclude there are no errors in its judgment.

From our review of the record of the exchange during the jury-out hearing discussing the admission of the victim's prior domestic abuse incidents, we conclude that the Defendant did not raise a constitutional argument pursuant to the Sixth Amendment in response to the trial court's decision to bar this evidence. This issue of constitutionality was raised for the first time on appeal. Because the Defendant's constitutional claim is raised for the first time on appeal, the issue is waived. *See* Tenn. R. App. P. 36(a); *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived."). It is well settled that an appellant cannot change theories for relief from the trial court to the appellate court. Accordingly, his new theory is waived on appeal. *See State v. Dooley*, 29 S.W.3d 542, 549 (Tenn. Crim. App. 2000). In his reply brief, the Defendant appears to request plain error review of this issue. Based on the strength of the evidence, we hold that even if the evidence had been submitted into the record by the trial court, it does not appear that it would have affected the outcome of the trial and thus we conclude that the Defendant would not be entitled to plain error relief. The Defendant is not entitled to relief as to this issue.

## C. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his convictions for aggravated assault (Count 1 assault by strangulation; Count 3 assault with a baseball bat) and especially aggravated kidnapping. He contends that the evidence showed the victim's injuries were old and that her testimony that he held her captive and assaulted her for twelve hours was not credible. He also contends that the victim's confinement was incidental to the aggravated assaults and did not exceed that which was necessary to accomplish those acts. The State responds that, viewing the evidence in the light most favorable to the State, a rational juror could have concluded that the evidence was sufficient to sustain all three convictions. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their

13

demeanor on the stand. Thus[,] the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

Aggravated assault, as charged in this case, is defined as intentionally or knowingly causing bodily injury to the victim by means of strangulation or attempted strangulation, or by use of a deadly weapon. T.C.A. §§ 39-13-101(a)(1), 39-13-102(a)(1)(A)(iii), (iv). Especially aggravated kidnapping is defined as "false imprisonment . . . [w]here the victim suffers serious bodily harm." T.C.A. § 39-13-305(a)(4). False imprisonment, in turn, is committed when a person "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a). "'Unlawful' means, with respect to removal or confinement, one that is accomplished by force, threat or fraud." T.C.A § 39-13-301(15).

When these two crimes arise out of the same incident, the Tennessee Supreme Court requires the trial court to instruct the jury that it must determine "whether the removal or confinement [required for the especially aggravated kidnapping conviction] is, in essence, incidental to the [aggravated assault] or, in the alternative, is significant enough, standing alone, to support a conviction." *State v. White*, 362 S.W.3d 559, 578 (Tenn. 2012). The trial court in the present case provided such instructions, and the Defendant does not contend that the trial court erred in its instructions to the jury on this question.

The Tennessee Supreme Court has "determined . . . that the question of whether a kidnapping was 'essentially incidental' to an accompanying offense is a question of fact for a properly instructed jury." *State v. Alston*, 465 S.W.3d 555, 561 (Tenn. 2015). Our review in a challenge to this determination is a conventional sufficiency of the evidence assessment. *Id.* at 561-62.

Viewing the evidence in the light most favorable to the State, the Defendant assaulted the victim by strangling her multiple times inside his van as well as hitting her with a baseball bat. The victim recalled losing consciousness on three separate occasions,

14

once awaking to her hands being bound. The Defendant contests the age of the victim's injuries, stating that they could have come from an older assault. The jury rejected that theory by accrediting the victim's testimony that the Defendant caused her injuries on the night of June 21, 2023. Throughout the night of the assault, the Defendant would fall asleep and then wake up to restrain her again from leaving when she made multiple attempts to leave. The victim testified that the Defendant threatened her and said she would not be allowed to leave the van. When she attempted to escape the next morning, the Defendant chased her and attempted to run over her with his van. This evidence was sufficient for a rational trier of fact to conclude, beyond a reasonable doubt, that the Defendant committed especially aggravated kidnapping as a non-incidental offense accompanying an aggravated assault. The Defendant's assaults were complete at the beginning of the evening when he first choked the victim and hit her with a baseball bat. He restrained the victim inside the van for many more hours and threatened her to prevent her from leaving.

We have recognized that "[t]he statutory elements of aggravated kidnapping do not require a finding that the Defendant moved the victim any specific distance or restrained her for any particular length of time in order for the Defendant's actions to substantially interfere with the victim's liberty." *State v. King*, 703 S.W.3d 738, 763 (Tenn. Crim. App. 2024). The evidence presented was such that a rational juror could conclude that the Defendant's confinement of the victim was significant enough to support his convictions of especially aggravated kidnapping. The Defendant is not entitled to relief on this issue.

### D. Sentencing

The Defendant contends that the trial court erred when it sentenced him as a Range III offender for the aggravated assault convictions and a Range II offender for the kidnapping conviction because it misapplied the law. The State responds that the Defendant stipulated to the applicable ranges at the sentencing phase. The State also responds that the Defendant is raising this issue for the first time on appeal and, therefore, has waived a challenge to the same on appeal. The State asserts that he is not entitled to plain error review. In his reply brief, the Defendant contends that his sentence was excessive because his offender classification was determined using prior convictions which were inapplicable by law. He contends that the trial court applied an incorrect legal standard, and thus, its ruling is not entitled the abuse of discretion standard of review. He therefore contends that he is entitled to plain error review. In response, the State has filed supplemental authority which held that new allegations of error without an accompanying objection at the trial level could not be raised in a reply brief. Thus, the State contends that the Defendant's issue remains subject to waiver. We agree with the State.

It is well settled that this court reviews within-range sentences and alternative sentences imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W. 3d 682, 707 (Tenn. 2012); *State v.*

*Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Once the trial court has determined the appropriate sentencing range, it "is free to select any sentence within the applicable range." *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (citing T.C.A. § 40-35-210(d)). When determining a defendant's sentence and the appropriate combination of sentencing alternatives, trial courts are to consider the following factors:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court must state on the record the statutory factors it considered and the reasons for the ordered sentence. *Id.* § 40-35-210(e); *Bise*, 380 S.W.3d at 705-06. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence, however, should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. A trial court's sentence "should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

A defendant who is found by the court beyond a reasonable doubt to be a career offender, as in the present case, shall receive the maximum sentence within the applicable Range III. T.C.A. § 40-35-108(c). The finding that a defendant is or is not a career offender is appealable by either party. §40-35-108(d). Moreover, once a defendant stipulates that he is a career offender, as he did in this case, he or she can no longer challenge that classification, and the trial court must sentence the defendant as a career offender. The trial court does not have any discretion as to the sentence length when sentencing a career offender. *See State v. Parvin*, No. E2000-01756-CCA-R3-CD, 2001 WL 987189, at *4 (Tenn. Crim. App. Aug. 29, 2001) (citing *State v. Franklin*, No. 02C-01-9404-CR-00081, 1994 WL 697928 at *1 (Tenn. Crim. App. , Dec. 14, 1994)), *no perm. app. filed.*

The Defendant did not dispute the validity of his prior convictions at his sentencing hearing, and he stipulated to the ranges utilized by the trial court. On appeal, the Defendant now asserts that sentencing him as a Range III, persistent offender for his aggravated assault convictions, and as a Range II, multiple offender for the kidnapping conviction, was not done in accordance with sentencing law in Title 40, Chapter 35 of the Tennessee Criminal Code. He claims that for both the aggravated assault convictions and the

16

kidnapping conviction, seven out of eight prior felony convictions which were used to determine his sentencing range, were convictions from before July 1, 1982. This fact, he contends, indicates that the trial court did not sentence him in accordance with the law and therefore, its sentencing decision is not entitled to a presumption of correctness.

The State filed newly-decided supplemental authority addressing the instance of a defendant asking the appellate court to find the trial court in error on an issue that the trial court was never asked to consider or rule upon. *State v. Neece*, No. E2023-01654-CCA-R3-CD, 2026 WL 413050, at *4 (Tenn. Crim. App. Feb. 13, 2026), *no perm. app. filed*. In *Neece*, the defendant asserted a claim about the jury's deliberation process and raised for the first time on appeal an argument dependent on legal standards. *Id.* This court declined to consider the newly-raised argument and concluded that the defendant had waived plenary review of the issue, stating that the defendant would obtain relief, if at all, under the plain error doctrine. *Id. Neece* also concluded that plain error relief must be sought in the opening brief on appeal to promote "an orderly, transparent, and fair appellate process" to give the parties a "full and meaningful opportunity to address the distinct elements and burdens" necessitated by plain error review. *Id.* We stated: "consistent with this framework, an appellate court *may* refrain from conducting plain error review when an appellant advances that theory of relief for the first time in a reply brief. *Id.* (citing *State v. Nunez*, No. M2024-00179-CCA-R3-CD, 2025 WL 1892446, at *9 (Tenn. Crim. App. July 9, 2025), *perm. app. denied* (Tenn. Nov. 20, 2025)). Further,

> [a]llowing plain error claims to surface for the first time in a reply brief may distort the adversarial process and encourage delayed presentation of arguments until a point when the opposing party has no meaningful opportunity to respond. As this court has observed, permitting new arguments to be advanced in a reply brief is "fundamentally unfair, as the appellee may not respond to a reply brief."

*Id.* (citing *State v. Morgan*, __ S.W.3d __, No. E2023-01815-CCAR3-CD, 2025 WL 1604472, at *11 (Tenn. Crim. App. June 6, 2025) (citation modified), *perm. app. denied* (Tenn. Oct. 9, 2025)). We also noted the "limited role of the reply brief. Our supreme court has made clear that when an appellant "only fully asserts and briefs [a] claim in [the] reply brief," the issue is waived. *Id.* (citing *Hughes v. Tenn. Bd. of Prob. & Parole*, 514 S.W.3d 707, 724 (Tenn. 2017); *Owens v. Owens*, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007) ("A reply brief is a response to the arguments of the appellee. It is not a vehicle for raising new issues.")). Recognizing our institutional caution against making a "routine practice of allowing plain error arguments to surface first in a reply brief undermines the appellate process and rewards strategic silence over timely advocacy," we declined to conduct plain error review in *Neece*. *Id.* (citing *Nunez*, 2025 WL 1892446, at *9).

In the present case, the Defendant, in his reply brief, raised for the first time the issue of the inapplicability of his prior convictions. As we did in *Neece*, we respectfully

decline to exercise our discretion to conduct plain error review under these circumstances. The Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

_s/ ROBERT W. WEDEMEYER_
ROBERT W. WEDEMEYER, PRESIDING JUDGE